THE STATE, EX REL. MULLIN ET AL., *v.* CITY OF MANSFIELD ET AL.

[Cite as State, ex rel. Mullin, v. Mansfield (1971), 26 Ohio St. 2d 129.]

130

(No. 70-172—Decided May 12, 1971.)

*Mr. Duane F. Lantz* and *Mr. Donald M. Colasurd,* for relators.

*Mr. Robert K. Rath,* city solicitor, for respondents.

O'NEILL, C. J. This case poses the question: Do the provisions of R. C. 143.27 deny to a noncharter city council the power to reduce the salary scales of the classified employees of the city police department, by city ordinance, for economic reasons?

We hold (1) that the city council of a noncharter city has the power to reduce the salary scales of the classified employees of the city police department for economic reasons, and (2) that the provisions of R. C. 143.27 do not affect the power of a noncharter city, by ordinance, to establish the number of employees in a department of city government or to establish the salary scales for classified city employees.

This original action in mandamus seeks to compel the personnel and financial officers of Mansfield, Ohio, a noncharter city, to increase the salaries of the members of the

city police department. The police salaries were raised by an initiated ordinance passed by a vote of the electorate on November 4, 1969, but, on December 12, 1969, after one pay period at the increased salaries, those salaries were reduced for economic reasons by an emergency ordinance passed by city council.

The relators, police officers, filed the petition, respondents filed an answer and both the relators and respondents filed separate motions for judgment on the pleadings.

The parties agree on the following statement of facts:

The salaries of members of the city police department were raised by an initiated ordinance, approved by the electorate. The increased salaries were paid for two weeks. The city council then passed an emergency ordinance to reduce the salaries below those established by the initiated ordinance, but higher than those in effect prior to the adoption of the initiated ordinance. The lower salaries provided by the councilmanic ordinance have been paid since its effective date. The reductions in salaries of the employees of the police department were not based on acts of misfeasance, malfeasance or nonfeasance, or other disciplinary reasons. Such reductions were based solely upon economic reasons.

The relators do not challenge the validity of the emergency ordinance passed by council repealing the initiated ordinance as applying to employees hired after its passage.

It is agreed by the parties to this action that the city council has the power to repeal, by ordinance, an initiated ordinance previously adopted by the electorate.

R. C. 143.27 provides, in pertinent part:

*"The tenure of every officer or employee in the classified service of the state and the counties, cities, city health districts, general health districts, and city school districts thereof, holding a position under Sections 143.01 to 143.48, inclusive, of the Revised Code, shall be during good behavior and efficient service and no such officer or employee shall be reduced in pay or position, suspended, or remov-*

ed, except for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the Director of State Personnel or the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office.

"In any case of reduction, suspension of more than five working days, or removal, the appointing authority shall furnish such employee with a copy of the order of reduction, suspension, or removal, which order shall state the reasons therefor. Such order shall be filed with the Director of State Personnel and State Personnel Board of Review, or the commission, as may be appropriate." (Emphasis added.)

There is no constitutional question involved in this case.

Section 3 of Article XVIII of the Constitution of Ohio provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

This court held, in paragraph four of the syllabus of *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191, 151 N. E. 2d 722, as follows:

"The words, 'as are not in conflict with general laws' found in Section 3 of Article XVIII of the Constitution, modify the words 'local police, sanitary and other similar regulations' but do not modify the words 'powers of local self-government.' "

The powers of the city council of a noncharter city to establish the number of employees to be employed in any city department and the pay scale classification of such employees is a basic and fundamental power of local government.

In *State, ex rel. Petit,* v. *Wagner* (1960), 170 Ohio

St. 297, 164 N. E. 2d 574, this court pointed out, at page 303:

"\* \* \* It is apparent therefore that, by what they said, the people expressed an intention that, in the absence of the adoption of a charter pursuant to Section 7 or of the adoption of any 'additional laws \* \* \* for the government of municipalities adopting the same' pursuant to Section 2, the 'general laws \* \* \* for the \* \* \* government of' municipalities authorized by Section 2 were to control a municipality in the *exercise* of the powers of local self-government conferred upon it by Section 3. Where a charter is adopted, then, under Section 7, the municipality 'may, subject to the provisions [*i. e.,* limitations] of Section 3 [not Sections 2 *and* 3] \* \* \* exercise thereunder [*i. e.,* under the charter instead of under general laws] all powers of local self-government.' The only limiting provision then applicable is that specified in Section 3, that 'local police, sanitary and other similar regulations' shall 'not \* \* \* conflict with general laws.' (Paragraph four of syllabus of *State, ex rel. Canada,* v. *Phillips, supra.*)"

See, also, the case of *Leavers* v. *Canton* (1964), 1 Ohio St. 2d 33, which is based upon *Wagner, supra.*

Relators argue that the ordinance reducing the pay of the members of the police department is at a variance with the provisions of R. C. 143.27 and that therefore the ordinance is invalid under Section 3 of Article XVIII of the Constitution of Ohio and *Leavers* v. *Canton, supra.*

The error in relators' argument is that they misinterpret the language of the statute. Relators contend that, under R. C. 143.27, a city council of a noncharter city can *never* reduce the number of employees in a city department or the pay of such employees, regardless of the condition of the city's finances or the changing responsibilities and duties of a city department.

The unreasonableness of that contention is demonstrated by relators' statement that the city council could employ new policemen at the lower salary after the councilmanic ordinance reducing salaries was adopted. If rela-

tors were correct, the result would be that policemen holding the same classification and rank under civil service and performing the same duties would be drawing different salaries. Should economic conditions so affect city finances as to require another reduction in salaries there could well be three different salaries being paid to policemen in the same rank and classification, performing the same duties. The magnitude of the chaos which such an interpretation would create is apparent when it is realized that R. C. 143.27 applies not only to cities, but also to the state and several political subdivisions thereof.

The correct interpretation of R. C. 143.27 can be ascertained by a careful reading of the language. It is obvious that R. C. 143.27 provides that every officer or employee under civil service in the state, cities and certain political subdivisions of the state shall have tenure during good behavior and efficient service, and that they, as individuals, cannot be reduced in pay or position, suspended or removed *except* on certain specified grounds or failure of good behavior or acts of misfeasance, malfeasance or nonfeasance in office.

That section provides further that in any case of reduction in pay, suspension for more than five days or removal, the appointing authority must furnish the employee with a copy of the disciplinary order. The order is required to be filed with the proper disciplinary authority and must state the reasons for the disciplinary penalty imposed. The section then provides the appeal rights and procedures of the employee, governs the disciplinary actions of appointing authorities and sets forth the rights of employees who are disciplined.

A comparison of this section with former R. C. 143.26 (now repealed) makes it clear that R. C. 143.27 was drafted to protect individual civil service employees from political sanction and in no way limits the power of a city council of a noncharter city to establish the number of employees to be employed in an entire municipal department of government or the power to establish the pay scales in

each of the various civil service classifications of the municipality.

The writ of mandamus is denied.

*Writ denied.*

HERBERT, DUNCAN, CORRIGAN, STERN and LEACH, JJ., concur.

SCHNEIDER, J., would also deny the writ, but for the reason that the relators have a plain and adequate remedy provided by law.