THE STATE, EX REL. VILLARI, *v.* CITY OF BEDFORD HEIGHTS ET AL.

[Cite as State, ex rel. Villari, *v.* Bedford Hts. (1984), 11 Ohio St. 3d 222.]

(No. 83-925—Decided June 27, 1984.)

*Mr. J. Darryl Zingales* and *Ms. Joy M. Freda,* for relator.
*Mr. Charles E. Merchant* and *Ms. K. J. Montgomery,* for respondents.

*Per Curiam.* It is well-settled that a claim by a public employee of entitlement to wages or benefits which are granted by statute or ordinance is actionable in mandamus. See *State, ex rel. Britton,* v. *Scott* (1983), 6 Ohio St. 3d 268; *State, ex rel. Bossa,* v. *Giles* (1980), 64 Ohio St. 2d 273 [18 O.O.3d 461]; *State, ex rel. Fenske,* v. *McGovern* (1984), 11 Ohio St. 3d 129. In order for a writ to issue in such a case the right to relief must be clear and the amount established with certainty. See *State, ex rel. McGarvey,* v. *Zeigler* (1980), 62 Ohio St. 2d 320 [16 O.O.3d 363]; *State, ex rel. Colangelo,* v. *McFaul* (1980), 62 Ohio St. 2d 200 [16 O.O.3d 239].

## I

The only factual matter in dispute is the date of relator's termination. Relator contends that his retirement should be effective May 12, 1982, the date indicated in his letter of resignation. Respondents contend that relator's employment terminated on January 19, 1982, when another person was allegedly appointed to relator's position.

The following is an excerpt from the minutes of the council meeting held on January 25, 1982:

"At this point, Mr. Merchant interjected the subject of Tony Bentempo [*sic* Anthony Bontempo]. He asked for Council's intentions regarding his position as acting Commissioner and salary. Mr. Mallin moved to draw legislation *creating this position and providing a commensurate salary to that of building commissioner.*

"* * * Motion passed." (Emphasis added.)

It is clear from these minutes that Bontempo was appointed to the newly created position of acting building commissioner, rather than to relator's position of building commissioner, and thus, relator's employment was not terminated effective January 19, 1982 as respondents contend. In view of this finding, any subsequent resolution purporting to confirm such an appointment is of no effect.

Relator's contention that his retirement was effective on May 12, 1982 is

also untenable, however, in view of the fact that he commenced to receive retirement benefits effective March 1, 1982. Accordingly, we find that relator's employment terminated March 1, 1982, the date of his retirement, and that he is entitled to salary and benefits to that date.

## II

Having established the date of termination, the amounts to which relator is entitled for salary, earned but unused vacation pay and sick leave, and longevity compensation can then be established with certainty by reference to the appropriate ordinance in effect at that time. On January 20, 1981, Section 157.11 of the Codified Ordinances of the city of Bedford Heights concerning sick leave and payment for unused sick leave, was amended. On March 2, 1982, Ordinance No. 157.10, concerning longevity compensation, was amended and a new salary ordinance was enacted. Ordinance Nos. 157.11 and 157.10 provided that their terms were effective as of January 20, 1981 and January 1, 1982, respectively, and thus, they govern the amounts to which relator is entitled.

Relator claims entitlement to a lump sum of $1,500 in longevity compensation. However, we find that longevity compensation is not paid in a lump sum, but is an increment to each pay check. Pursuant to Ordinance No. 157.10, relator is entitled to receive longevity compensation at four and one-half percent of his salary for the period from January 15, 1982 to March 1, 1982.

## III

No dispute exists as to the number of hours which relator has accumulated in unused sick leave, and thus, he is entitled to payment for three hundred two hours in sick leave. Similarly, respondents do not contest that relator is entitled to compensation for earned but unused vacation leave, but they dispute relator's contention that the vacation pay should be computed by taking into consideration relator's prior service with Warrensville Heights.

Relator argues that, pursuant to R.C. 9.44, his prior service with Warrensville Heights should be considered in computing his vacation credits. R.C. 9.44 provides:

"A person employed, other than as an elective officer, by the state or any political subdivision of the state, earning vacation credits currently, is entitled to have his prior service with any of these employers counted as service with the state or any political subdivision of the state, for the purpose of computing the amount of his vacation leave. The anniversary date of his employment for the purpose of computing the amount of his vacation leave, unless deferred pursuant to the appropriate law, ordinance, or regulation, is the anniversary date of such prior service."

Bedford Heights has adopted no ordinance deferring the application of R.C. 9.44, but respondents argue that matters involving the compensation to be paid to its employees is a matter of local concern not subject to regulation

by the state. This general principle is well-established. See, *e.g.*, *Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375 [15 O.O.3d 450]; *State, ex rel. Mullin,* v. *Mansfield* (1971), 26 Ohio St. 2d 129 [55 O.O.2d 239].

However, where a statute addresses matters of general and statewide concern in an area otherwise subject to municipal regulation, the statute will govern. Thus, in *State, ex rel. Evans,* v. *Moore* (1982), 69 Ohio St. 2d 88 [23 O.O.3d 145], we held that Ohio's prevailing wage law preempts and supersedes any local wage ordinance to the contrary, finding at 90-91, that "* * * the General Assembly, in enacting the prevailing wage law, manifested a statewide concern for the integrity of the collective bargaining process in the building and construction trades."

We believe and so find that R.C. 9.44 manifests a similar concern for the security and protection of public employees, and at the same time presents only a minimal intrusion into matters of traditionally local concern. R.C. 9.44 requires only that prior service be counted in determining the amount of vacation leave. Moreover a municipality may avoid application of R.C. 9.44 by appropriate legislation.

In view of the fact that Bedford Heights did not adopt any legislation deferring the application of R.C. 9.44, we hold that its provisions apply, and require respondents to compute relator's vacation pay with reference to his prior service.[1]

The writ prayed for is allowed.

*Writ allowed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

LOCHER and HOLMES, JJ., dissent.

LOCHER, J., dissenting. I have two concerns with the majority opinion this day. Accordingly I feel compelled to dissent.

The first concern involves our resolution of a mandamus action when facts are in dispute. The majority herein, alluding to the minutes of the January 25, 1982 council meeting as one of several "facts," concludes that the relator's employment terminated on March 1, 1982. Such an essentially evidentiary review to resolve disputed "facts" is an anathema to the well-established doctrine that a writ of mandamus is an extraordinary remedy. Such a remedy, as a rule, will not be granted if a plain and adequate remedy

---

[1] Thus, for 1968-1969, relator was entitled to three weeks' vacation per year and from 1970 forward, he was entitled to four weeks' vacation per year. For purposes of this action, he is entitled to pay at the rate of compensation he was receiving for the year specified, for the amount of vacation earned, less that actually used, as follows: for 1968, three weeks; for 1969, one week; for 1970 through 1976, two weeks per year; for 1977 through 1981, one week per year, for a total of twenty-three weeks.

226

exists at law. *State, ex rel. Laramie Corp.*, v. *Cleveland* (1981), 65 Ohio St. 2d 35 [19 O.O.3d 227]; *State, ex rel. Square*, v. *Planning Comm.* (1980), 64 Ohio St. 2d 128 [18 O.O.3d 362]. As we noted in *State, ex rel. Bossa*, v. *Giles* (1980), 64 Ohio St. 2d 273 [18 O.O.3d 461], disputes "over the number of hours of leave due might not be appropriately decided by an action in mandamus." *Id.* at 276. Thus, the findings of fact made by this court allows relator to circumvent filing an action at law in money damages — the procedurally proper means of ascertaining and resolving the disputed issues of fact herein. While I sympathize with the desire of my brethren to expedite this matter, in the interests of judicial economy, such economizing is wholly inconsistent with this court's previous view of mandamus.

It is readily apparent that the amount of recovery, in the absence of our action as a trial court, is not established to any degree of certainty. Thus the majority would maintain a position inconsistent with a host of our recent decisions. *Monaghan* v. *Richley* (1972), 32 Ohio St. 2d 190 [61 O.O.2d 425], syllabus; *State, ex rel. Martin*, v. *Columbus* (1979), 58 Ohio St. 2d 261 [12 O.O.3d 268], paragraph one of the syllabus; *State, ex rel. Crockett*, v. *Robinson* (1981), 67 Ohio St. 2d 363, 365 [21 O.O.3d 228].

My second concern involves the majority's use of *State, ex rel. Evans*, v. *Moore* (1982), 69 Ohio St. 2d 88 [23 O.O.3d 145], to justify the application of R.C. 9.44. For the reasons articulated in my dissent in *Moore, supra*, at 95-97, I do not believe that the instant application of R.C. 9.44 based upon the *Moore* decision is appropriate.

For the reasons set forth hereinabove I must therefore dissent.

HOLMES, J., concurs in the foregoing dissenting opinion.