STATE PERSONNEL BOARD OF REVIEW, APPELLANT, *v.* CITY OF BAY VILLAGE CIVIL SERVICE COMMISSION ET AL., APPELLEES.

[Cite as State Personnel Bd. of Review *v.* Bay Village Civil Service Comm. (1986), 28 Ohio St. 3d 214.]

(No. 86-388—Decided December 26, 1986.)

*Anthony J. Celebrezze, Jr.,* attorney general, and *Cherry L. Poteet,* for appellant.

*Squire, Sanders & Dempsey* and *Daniel J. O'Loughlin,* for appellees.

*Gary A. Ebert,* director of law, for appellee city of Bay Village.

*Marilyn G. Zack,* director of law, and *Robert M. Wolff,* for appellee city of Cleveland.

*Jacque M. Haines,* director of law, for appellee city of Lyndhurst.

HOLMES, J. The sole issue before us is whether a state agency has investigative and removal authority over a municipal civil service commission when the charter of the municipality provides for local investigation, notice and hearing prior to removal of its commissioners. For the reasons stated below, we hold that the state agency does not have such authority.

Section 7, Article XVIII of the Ohio Constitution provides:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

Section 3, Article XVIII provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

The Charters of the cities of Bay Village[1] and Cleveland[2] permit the mayor to remove civil service commissioners for malfeasance, with notice and a hearing, and the Charter of the city of Lyndhurst[3] grants the mayor general authority to appoint and remove public officers. However, the board argues it has authority over the cities' civil service commissions pursuant to Section 10, Article XV,[4] and Section 34, Article II,[5] Ohio Constitution and R.C. 124.40 enacted pursuant to those constitutional provisions. R.C. 124.40(A) provides, in pertinent part:

"Whenever the board has reason to believe that a municipal civil service commission is violating or is failing to perform the duties imposed

---

[1] Section 6.5 of the Charter of the city of Bay Village provides:

"The Mayor may at any time suspend any Commissioner for inefficiency, neglect of duty, malfeasance, misfeasance or nonfeasance in office, incapacity or incompetency, provided however that such suspension shall not be effective without the concurrence of two-thirds (2/3) of the total number of Councilmen provided for in this Charter, or until such Commissioner shall have been notified in writing of the charge against him at least ten (10) days in advance of any hearing upon such charge, and he or his counsel has been given an opportunity to be heard, present evidence, or examine any witness appearing in support of such charge."

[2] Section 124 of the Charter of the city of Cleveland provides, in part:

"The Mayor shall appoint five electors of the City as Civil Service Commissioners * * *.

"* * * A member of the Civil Service Commission may be removed by the Mayor for neglect of duty, incapacity, incompetency, or malfeasance in office, but only after opportunity has been given for a public hearing before the Mayor, to be held at least ten days after written charges have been made and notice thereof [has] been given to the accused member. Such member shall be heard in person or by counsel; and such removal shall be final."

[3] Section 5, Article IV of the Charter of the city of Lyndhurst, Ohio provides, in part:

"* * * Subject to the other provisions of this Charter and the Laws of Ohio, the Mayor shall have the power to * * * remove any officer or employee of the City except (a) those required by this Charter to be elected, or (b) those whose terms of office are fixed by this Charter, other than the Director of Law and the Director of Finance. * * *"

[4] Section 10, Article XV, Ohio Constitution, provides:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

[5] Section 34, Article II, Ohio Constitution, provides:

"Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage and providing for the comfort, health, safety and general welfare of all employees, and no other provision of the constitution shall impair or limit this power."

upon it by law, or that any member of such municipal civil service commission is willfully or through culpable negligence violating the law or failing to perform his duties as a member of the commission, it shall institute an investigation, and if, in the judgment of the board, it finds any such violation or failure to perform the duties imposed by law, it shall make a report of such violation in writing to the chief executive authority of such city, which report shall be a public record.

"*Upon the receipt of the report* from the board, charging a municipal civil service commissioner with violating or failing to perform the duties imposed by law, or willfully or through culpable negligence violating the law by failure to perform his duties as a member of the municipal civil service commission, along with the evidence on which the report is based, *the chief executive officer of the city shall forthwith remove the municipal civil service commissioner*. In all cases of removal of a municipal civil service commissioner by the chief executive authority of any such city an appeal may be had to the court of common pleas * * *. * * * The chief executive authority of such city may at any time remove any municipal civil service commissioner for inefficiency, neglect of duty, or malfeasance in office, having first given to the commissioner a copy of the charges against him and an opportunity to be publicly heard in person or by counsel in his own defense." (Emphasis added.)

A municipality is considered to have general home-rule authority to regulate the appointment, removal, qualifications, compensation, and duties of its officers and employment. *Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375 [15 O.O.3d 450]; *State, ex rel. Mullin,* v. *Mansfield* (1971), 26 Ohio St. 2d 129 [55 O.O.2d 239]; and *State, ex rel. Lentz,* v. *Edwards* (1914), 90 Ohio St. 305. While this authority has been required to yield to general state laws where the municipal regulations have significant extraterritorial effects on areas of statewide concern, see, *e.g., State, ex rel. Evans,* v. *Moore* (1982), 69 Ohio St. 2d 88 [23 O.O.3d 145] (prevailing wage law superseded local wage regulation); *State, ex rel. Villari,* v. *Bedford Hts.* (1984), 11 Ohio St. 3d 222 (calculation of employee benefits); *State, ex rel. Adkins,* v. *Sobb* (1986), 26 Ohio St. 3d 46 (vacation leave credits); *Kettering* v. *State Emp. Relations Bd.* (1986), 26 Ohio St. 3d 50 (public employees collective bargaining), the state here cannot satisfy the first statewide concern requirement of "significant extraterritorial effects" set forth in *State, ex rel. Evans, supra.* Simply because a city's civil service commission's actions may affect employees beyond the city's boundaries, *e.g.,* city health district and school district employees,[6] does not justify a state agency's initiating an investigation, which could lead to

---

[6] This court's holding in *State, ex rel. Stough,* v. *Bd. of Edn.* (1977), 50 Ohio St. 2d 47, 49 [4 O.O.3d 116], that a municipal civil service commission's jurisdiction over city school district employees is subject to the state's authority over public education under Section 3, Article VI, of the Ohio Constitution, is inapposite because the case *sub judice* does not concern a municipal civil service commission's jurisdiction over city school district employees, but its jurisdiction over its own membership.

mandatory removal of a municipal civil service commissioner, when that municipality has lawfully provided reasonable procedures of its own for selection and removal of its commissioners. The make-up of such municipal commissions simply does not have significant extraterritorial effects. Those harmed by any alleged nonperformance of legal duties could pursue an action in mandamus.

The state also cannot satisfy the second prong of the statewide concern test, *i.e.*: " '* * * [E]ven if there is a matter of local concern involved, if the regulation of the subject matter affects the general public of the state as a whole more than it does the local inhabitants the matter passes from what was a matter for local government to a matter of general state interest.' " (Emphasis deleted.) *Kettering, supra,* at 54.

While this court in *Kettering, supra,* may have found that the public employee labor strife was a proper subject for application of the statewide concern doctrine, that subject is much more far-reaching than is the subject of who sits on a local civil service commission. The investigation, appointment and removal of members of these commissions are matters of purely internal functioning as opposed to the public employee collective bargaining plan involved in *Kettering*. In the case *sub judice*, there is no statewide concern for the membership of municipalities' civil service commissions and certainly none which outweighs the concern of the local inhabitants over the subject.

In addition to the statewide concern doctrine, appellant argues that local regulation of a municipal civil service commission must yield to conflicting state laws. This argument ignores the fact that municipal civil service commissions established under city charters are matters of local self-government, *State, ex rel. Lentz, supra,* and the fact that the phrase in the Home Rule Amendment, "as are not in conflict with general laws," restricts only the municipality's power to adopt "local police, sanitary and other similar regulations," not its powers of local self-government. *Dies Electric Co.* v. *Akron* (1980), 62 Ohio St. 2d 322, 325 [16 O.O.3d 365], citing *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191 [5 O.O.2d 481], paragraph four of the syllabus; and *State, ex rel. Petit,* v. *Wagner* (1960), 170 Ohio St. 297 [10 O.O.2d 344]. See, also, *Benevolent Assn.* v. *Parma, supra,* at 378 (municipal compensation ordinance is a matter of local self-government and prevails over conflicting general laws); and *State, ex rel. Bindas,* v. *Andrish* (1956), 165 Ohio St. 441 [60 O.O. 92], paragraphs one and two of the syllabus (municipality may determine qualifications of its council despite different general laws).

Authority cited by appellant for the proposition that the municipal regulation must yield to state regulation, and other cases in which the state regulation has been held to prevail, involve only "local police, sanitary and other similar regulations." *Clermont Environmental Reclamation Co.* v. *Wiederhold* (1982), 2 Ohio St. 3d 44 (hazardous waste disposal facility); *Eastlake* v. *Bd. of Bldg. Stds.* (1981), 66 Ohio St. 2d 363

[20 O.O.3d 327] (building construction standards); *Columbus* v. *Teater* (1978), 53 Ohio St. 2d 253 [7 O.O.3d 410] (river preservation); *Canton* v. *Whitman* (1975), 44 Ohio St. 2d 62 [73 O.O.2d 285] (water fluoridation); *Willoughby Hills* v. *Corrigan* (1972), 29 Ohio St. 2d 39 [58 O.O.2d 100] (airport zoning regulation); *Cleveland Electric Illuminating Co.* v. *Painesville* (1968), 15 Ohio St. 2d 125 [44 O.O.2d 121] (electric lines); and *Bucyrus* v. *Dept. of Health* (1929), 120 Ohio St. 426 (sewage).

Municipalities, particularly charter municipalities, have "* * * the broadest possible powers of self-government in connection with all matters which are strictly local and do not impinge upon matters which are of a state-wide nature or interest." *State, ex rel. Hackley,* v. *Edmonds* (1948), 150 Ohio St. 203, 212 [37 O.O. 474]. In other words, the municipality's immunity from protection against state regulation under Section 3, Article XVIII, Ohio Constitution, is confined "* * * solely to the government and administration of the internal affairs of the municipality * * *." *Beachwood* v. *Bd. of Elections* (1958), 167 Ohio St. 369 [5 O.O.2d 6], paragraph one of the syllabus. We find that the municipalities' charter provisions herein, regulating the procedures for selection and removal of their civil service commissioners, are sufficiently confined to the internal affairs of these municipalities as to be immune from conflicting state regulations under the Home Rule Amendment. As we held in *State, ex rel. Lentz, supra,* at 310: "* * * That provisions adopted by a city might differ from the general laws within the limits defined was not only expected but the very purpose of the amendment was to permit such differences and make them effective."

We agree with the court of appeals that "[t]he General Assembly has authority to enact such laws to be applicable in cities 'only where and to the extent that such laws will not restrict the exercise by such cities of their powers of local self-government.' *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191, at 195 [5 O.O.2d 481]." However, we do not find R.C. 124.40(A) to be unconstitutional as violative of Section 3, Article XVIII of the Ohio Constitution since it may be constitutionally applied: (1) to cities which have failed to enact charter or legislative provisions on the subjects covered by it, or (2) where it does not conflict with any charter or municipal legislative provisions, or (3) where a municipality has expressly adopted the state statute.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

LOCHER, C. BROWN and WRIGHT, JJ., concur.

CELEBREZZE, C.J., concurs in judgment only.

SWEENEY and DOUGLAS, JJ., dissent.

SWEENEY, J., dissenting. Because the majority has totally misconstrued the pertinent statute in issue, I must respectfully dissent in this cause.

R.C. 124.40 states in relevant part:

"(A) The mayor or other chief appointing authority of each city in the state shall appoint three persons, one for a term of two years, one for four years, and one for six years, who shall constitute the municipal civil service commission of such city and of the city school district and city health district in which such city is located. * * * Such municipal civil service commission shall prescribe, amend, and enforce rules not inconsistent with this chapter for the classification of positions in the civil service of such city and city school district, and all the positions in the city health district; for examinations and resignations therefor; for appointments, promotions, removals, transfers, layoffs, suspensions, reductions, and reinstatements therein; and for standardizing positions and maintaining efficiency therein. * * *

"* * *

"*Each municipal civil service commission shall make reports from time to time, as the board requires,* of the manner in which the law and the rules and regulations thereunder have been and are being administered, and the results of their administration in such city, city school district, and city health district. *A copy of the annual report of each such municipal civil service commission shall be filed in the office of the board as a public record.*

"*Whenever the board has reason to believe that a municipal civil service commission is violating or is failing to perform the duties imposed upon it by law, or that any member of such municipal civil service commission is willfully or through culpable negligence violating the law or failing to perform his duties as a member of the commission, it shall institute an investigation,* and if, in the judgment of the board, it finds any such violation or failure to perform the duties imposed by law, it shall make a report of such violation in writing to the chief executive authority of such city, which report shall be a public record." (Emphasis added.)

The "board" referred to in the foregoing statute is the appellant, State Personnel Board of Review. The majority herein completely ignores the above-emphasized language and has in effect obliterated the express intent of the General Assembly with respect to the state's oversight role towards municipal civil service commissions throughout the state. In addition, the majority has seemingly misread the abundant decisional law in the "home rule" area to reach a decision that is contrary to the plain language set forth in R.C. 124.40.

In my view, the statute is clear, concise and unambiguous. As R.C. 124.40 states in relevant language, "[w]henever the * * * [State Personnel Board of Review] has reason to believe that a municipal civil service commission is violating or is failing to perform the duties imposed upon it by law, * * * *it shall institute an investigation* * * *." (Emphasis added.)

Given this precise language, it is unnecessary for the majority to attempt to divine the intent of this statute by resort to other precedents or rules of statutory construction. The General Assembly, in promulgating this statute, determined that alleged improprieties on the part of municipal civil service commissions are a matter of statewide concern, and therefore it enacted this law empowering the board to investigate municipal civil service commissions. Such a conclusion is bolstered by the fact that the General Assembly requires municipal civil service commissions to make reports to the board, "* * * as the board requires * * *." R.C. 124.40(A).

Since the legislature has, through R.C. 124.40, determined that municipal civil service commissions are a subject of statewide concern, local governments cannot override the state's authority in this area, irrespective of whether the municipality has a charter form of government. As we stated in *State, ex rel. Evans,* v. *Moore* (1982), 69 Ohio St. 2d 88, 89-90 [23 O.O.3d 145]:

"It is a fundamental principle of Ohio law that, pursuant to the 'statewide concern' doctrine, a municipality may not, in the regulation of local matters, infringe on matters of general and statewide concern. See, *e.g., Eastlake* v. *Bd. of Bldg. Stds.* (1981), 66 Ohio St. 2d 363 [20 O.O.3d 327]; *Cleveland Electric Illuminating Co.* v. *Painesville* (1968), 15 Ohio St. 2d 125 [44 O.O.2d 121]. Moreover, as this court ruled in *Canton* v. *Whitman* (1975), 44 Ohio St. 2d 62, 66 [73 O.O.2d 285], municipal regulations which have significant extraterritorial effects are matters of statewide concern."

In light of the express language and clear intent of the statute in issue, I would reverse the judgment of the court of appeals. To do otherwise is completely contrary to the express and manifest intent of the General Assembly.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

DOUGLAS, J., dissenting. In addition to joining the well-reasoned dissent of Justice Sweeney, I would point out that the sweeping language of the majority opinion requires me to dissent. It is my judgment that this majority opinion will be used time and again, in the name of "home rule," to undermine matters determined by the legislature to be of statewide concern. A good example of this would be our recent decision in *Kettering* v. *State Emp. Relations Bd.* (1986), 26 Ohio St. 3d 50. Applied against the language in today's decision, *Kettering* would seem to be subject to an early demise.

It would have been my preference that the language of R.C. 124.40, emphasized by Justice Sweeney, had not been made part of the statute. However, the fact is that the language is there and no amount of attempt-

ing to explain it away by use of cases not on point will make that language disappear.

Accordingly, I respectfully, but reluctantly, dissent.

SWEENEY, J., concurs in the foregoing dissenting opinion.