City of Twinsburg, Appellant, v. State Employment Relations Board
et al., Appellees.

[Cite as Twinsburg v. State Emp. Relations Bd. (1988), 39 Ohio St. 3d 226.]

(No. 86-1947—Submitted March 8, 1988—Decided November 2, 1988.)

*William A. LeFaiver,* law director, for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Loren L. Braverman,* for appellee State Employment Relations Board.

*Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A., Paul S. Lefkowitz* and *Susannah Muskovitz,* for appellee Northern Ohio Patrolmen's Benevolent Assn.

*Lucas, Prendergast, Albright, Gibson & Newman, Robert J. Walter* and *Rankin M. Gibson,* urging affirmance for *amicus curiae,* Ohio Association of Public School Employees, AFSCME/AFL-CIO, Local No. 4.

*Hensley, Cox, Murry & Clark* and *James A. Hensley, Jr.,* urging affirmance for *amicus curiae,* Fraternal Order of Police of Ohio, Inc.

*Cloppert, Portman, Sauter, Latanick & Foley, Robert W. Sauter* and *Russell E. Carnahan,* urging affirmance for *amicus curiae,* Fraternal Order of Police, Capital City Lodge No. 9.

*Joseph W. Diemert, Jr. & Associates Co., L.P.A., Joseph W. Diemert, Jr.* and *William F. Schmitz,* urging affirmance for *amicus curiae,* Cuyahoga County Firefighters Assn.

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Renny J. Tyson,* urging affirmance for *amicus curiae,* Ohio Assn. of Professional Fire Fighters.

*Berkman, Gordon, Murray & Palda, George W. Palda, Lorraine R. Baumgardner* and *Kirschner, Weinberg & Dempsey,* urging affirmance for *amicus curiae,* American Federation of State, County & Municipal Employees, Ohio Council 8.

*Green, Haines, Sgambati, Murphy & Macala Co., L.P.A., Dennis Haines* and *Richard T. Bush,* urging affirmance for *amicus curiae,* Ohio Education Assn.

*Charles E. Merchant,* urging reversal for *amicus curiae,* city of Richmond Heights.

*Paul A. Grau,* director of law, *Nick A. Mandanici,* director of law, and *Ross S. Cirincione,* urging reversal for *amicus curiae,* city of Brecksville and the city of Warrensville Heights.

*Calfee, Halter & Griswold, John E. Gotherman, Mark I. Wallach* and *William E. Coughlin,* urging reversal for *amicus curiae,* Ohio Municipal League.

LOCHER, J. In *Rocky River* v. *State Emp. Relations Bd.* (1988), 39 Ohio St. 3d 196, 530 N.E. 2d 1, this court held that the provision for mandatory binding arbitration of collective bargaining disputes over municipal safety-employee benefits and wages, R.C. 4117.14(I), was unconstitutional in that such section (1) violated a municipality's right to exercise the powers of local self-government under Sections 3 and 7, Article XVIII of the Ohio Constitution, and (2) unlawfully delegated municipal legislative authority to set wages and salaries for municipal safety employees. We also held that Section 34, Article II of the Ohio Constitution has no application to R.C. Chapter 4117, as the Public Employees' Collective Bargaining Act neither directly nor indirectly regulates or establishes hours of employment and minimum wages. See *Rocky River, supra,* at 205-206, 530 N.E. 2d at 9-10.

In the present appeal, we are called upon by Twinsburg to rule that the entire Act is unconstitutional as applied to home-rule municipalities where its application would be contrary to specific charter provisions. Generally, "all legislative enactments enjoy a presumption of constitutionality[,]" and "the courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional." *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, 61, 4 OBR 150, 151, 446 N.E. 2d 449, 450. We find that, with the exception of its arguments concerning the Act's mandatory binding arbitration provisions, Twinsburg has not met the burden of overcoming this presumption of constitutionality. Accordingly, we affirm the judgment of the court of appeals to the extent that it is consistent with our holding in *Rocky River, supra.*

Twinsburg first contends that R.C. Chapter 4117 is unconstitutional because it conflicts with a municipality's right, by way of the home-rule

provisions of the Ohio Constitution, to independently determine the wages and terms of employment of its employees. We do not agree that an irreconcilable conflict exists in this case.

It is beyond question that pursuant to Sections 3 and 7, Article XVIII of the Ohio Constitution, all powers of local self-government are protected from state interference, and that state statutes may take precedence only where they conflict with local police power regulations. As this court held in *State, ex rel. Canada, v. Phillips* (1958), 168 Ohio St. 191, 5 O.O. 2d 481, 151 N.E. 2d 722, at paragraph four of the syllabus:

"The words, 'as are not in conflict with general laws' found in Section 3 of Article XVIII of the Constitution, modify the words 'local police, sanitary and other similar regulations' but do not modify the words 'powers of local self-government.'"

See, also, *Fenton v. Enaharo* (1987), 31 Ohio St. 3d 69, 70-71, 31 OBR 183, 184, 509 N.E. 2d 67, 68-69; *State Personnel Bd. of Review v. Bay Village Civil Service Comm.* (1986), 28 Ohio St. 3d 214, 28 OBR 298, 503 N.E. 2d 518; *Novak v. Perk* (1980), 64 Ohio St. 2d 43, 18 O.O. 3d 251, 413 N.E. 2d 784; *Dies Electric Co. v. Akron* (1980), 62 Ohio St. 2d 322, 16 O.O. 3d 365, 405 N.E. 2d 1026; *Northern Ohio Patrolmen's Benevolent Assn. v. Parma* (1980), 61 Ohio St. 2d 375, 15 O.O. 3d 450, 402 N.E. 2d 519; *State, ex rel. Kohl, v. Dunipace* (1978), 56 Ohio St. 2d 120, 10 O.O. 3d 309, 382 N.E. 2d 1358; *State, ex rel. Mullin, v. Mansfield* (1971), 26 Ohio St. 2d 129, 55 O.O. 2d 239, 269 N.E. 2d 602, certiorari denied (1981), 404 U.S. 985; *State, ex rel. Bindas, v. Andrish* (1956), 165 Ohio St. 441, 60 O.O. 92, 136 N.E. 2d 43; *Fitzgerald v. Cleveland* (1913), 88 Ohio St. 338, 103 N.E. 512.

The first step, then, in a proper home-rule analysis is to decide whether the matter in question involves an exercise of local self-government or an exercise of local police power. The final determination of municipal employee compensation and other terms of employment lies exclusively within the municipal power of local self-government. There is simply no more fundamental power of local self-government than the power of the purse. See *Rocky River, supra,* at 200, 530 N.E. 2d at 5; *Benevolent Assn., supra,* at 383, 15 O.O. 3d at 455, 402 N.E. 2d at 525.

Nevertheless, a municipality's constitutionally protected right to determine the compensation of its employees is not irreconcilable with those portions of R.C. Chapter 4117 that were left intact by our holding in *Rocky River, supra.* While municipal employee compensation is, in its final determination, an exercise of local self-government, it does not follow that the method or process by which such determination is made is exclusively encompassed by the power of local self-government. Without the mandatory binding arbitration provisions, R.C. Chapter 4117 sets forth a salutary framework for labor negotiations between public-employee organizations and public employers, and provides a means of resolving collective bargaining disputes that is intended to avoid, or at least minimize, the possibility of work stoppages in the public sector. See *Rocky River, supra,* at 207-208, 530 N.E. 2d at 11; *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44, v. State Emp. Relations Bd.* (1986), 22 Ohio St. 3d 1, 22 OBR 1, 488 N.E. 2d 181.

As a result, we are unable to conclude that Twinsburg's arguments in this case are sufficient to overcome the presumption that R.C. Chapter 4117 is constitutional. Broadly construed, the Act does not, on its face, unconstitu-

tionally intrude on a home-rule municipality's power to make the final determination regarding the wages and terms of employment of its employees.

Twinsburg also argues that R.C. Chapter 4117 violates the doctrine of separation of powers because it unlawfully delegates municipal legislative power to SERB and in effect places the city's officials in the position of being *de facto* agents of SERB. This issue was not raised before the courts below and is thus not properly before this court for review. See *State* v. *Awan* (1986), 22 Ohio St. 3d 120, 22 OBR 199, 489 N.E. 2d 277; *Thirty-Four Corp.* v. *Sixty-Seven Corp.* (1984), 15 Ohio St. 3d 350, 352, 15 OBR 472, 474, 474 N.E. 2d 295, 297. However, we note that this issue was disposed of in favor of the unconstitutionality of R.C. 4117.14(I) in *Rocky River, supra,* at 201-205, 530 N.E. 2d at 5-9.

Therefore, the judgment of the court of appeals is reversed insofar as it conflicts with our holding in *Rocky River, supra,* and is affirmed in all other respects.

*Judgment affirmed in part and reversed in part.*

MOYER, C.J., HOLMES and WRIGHT, JJ., concur.

H. BROWN, J., concurs in judgment only.

SWEENEY and DOUGLAS, JJ., concur in part and dissent in part.

WRIGHT, J., concurring. I would go further than the majority opinion and uphold the Act with specificity. The Act removes the prohibition against strikes by public employees (except for safety forces), establishes a system for collective bargaining for public employees, and provides a neutral body in the form of SERB to enforce the terms of the Act. Prior to the Act's passage, a public employer had the complete discretion to determine how, when, with whom, and about what it would bargain. The Ferguson Act provided severe sanctions for those acting contrary to its provisions. Despite these sanctions, strikes plagued both state and local governments. The Act provides a salutary framework for labor negotiations between public-employee organizations and public employers. Indeed, much of the Act is designed to avoid, or at least minimize, the possibility of work stoppages.

The Act's principal features are as follows:

(1) The Act confers upon public employees the right to associate or refrain from associating with employee organizations and to engage in collective bargaining. R.C. 4117.03.

(2) Public employers and employee organizations are prohibited from infringing upon the rights granted to public employees. R.C. 4117.11(A)(1) and (B)(1).

(3) A neutral agency in the form of SERB was created and has the authority to enforce the provisions of the Act. R.C. 4117.02.

(4) SERB bears the responsibility of determining appropriate bargaining units and supervising elections to determine what, if any, employee organization shall be certified as the exclusive representative of the public employees. R.C. 4117.04, 4117.05, 4117.06, and 4117.07.

(5) The Act sets forth the appropriate subjects for collective bargaining and the manner in which the collective bargaining agreement is to be executed by the parties. R.C. 4117.08, 4117.09, and 4117.10.

(6) The Act defines unfair labor practices and establishes the manner in which SERB investigates and

remedies such practices. R.C. 4117.11, 4117.12, and 4117.13.

(7) SERB has the duty of supervising statutory dispute settlement procedures. R.C. 4117.14.

(8) The Act sets forth the type of strikes by public employees that are both appropriate and inappropriate and the remedies available in such cases. R.C. 4117.15, 4117.16, and 4117.23.

A careful scrutiny of these provisions reveals no constitutional infirmities. These provisions clearly do not involve a direct intrusion into the legislative process of the municipality.

The thrust of the Act is to provide for statewide collective bargaining for public employees. I believe that matters involving the compensation to be paid to municipal employees are matters of local concern not subject to regulation by the state. However, where a statute addresses matters of general and statewide concern in an area otherwise subject to municipal regulation, the statute will govern. *State, ex rel. Villari,* v. *Bedford Hts.* (1984), 11 Ohio St. 3d 222, 224-225, 11 OBR 537, 539, 465 N.E. 2d 64, 67.

The establishment of a comprehensive framework for collective bargaining for employees in the public sector is surely a matter of general and statewide concern. Likewise, a framework that protects the integrity of the process of choosing a union, insuring free and open bargaining, and providing a neutral fact-finder should promote peaceful dispute resolution and minimize the possibility of strike actions.

In summary, I think we should directly hold that the General Assembly may constitutionally authorize collective bargaining by charter-city employees acting through employee organizations with a city having a home-rule charter. Likewise, the General Assem-

bly may create a neutral body in the form of SERB to effectuate and enforce the provisions of the Ohio Public Employees' Collective Bargaining Act with respect to the formation, certification and activities of these employee organizations.

Accordingly, I concur.

SWEENEY, J., concurring in part and dissenting in part. It is my position that the majority has glossed over or ignored the numerous arguments or theories presented to us in this cause. The dispositive issue presented in this appeal is whether R.C. Chapter 4117, the Public Employees' Collective Bargaining Act, is constitutional as applied to home-rule municipalities. The majority's attempt to hide behind the ill-conceived *Rocky River* decision should not prevent a thorough analysis of the arguments presented in this cause.

The appellant city argues essentially that it has a substantial and fundamental constitutional right of local self-government to independently determine wages, terms and other conditions of employment of its municipal employees. Therefore, appellant submits that R.C. Chapter 4117 should be held not to apply to charter municipalities where its application would be contrary to and result in a violation of specific charter provisions.

Appellees, SERB and NOPBA, contend that R.C. Chapter 4117 prevails over conflicting municipal charter provisions and ordinances because R.C. Chapter 4117 is a general law that addresses matters of statewide concern. Appellees further argue that R.C. Chapter 4117 prevails over municipal charter provisions and ordinances because it constitutes a legislative enactment providing for the general welfare of all employees. Appellees assert that under Section 34,

Article II of the Ohio Constitution, legislative enactments providing for the general welfare of all employees shall not be impaired by the home-rule provisions of the Ohio Constitution.

Whenever this court is presented with a challenge to the constitutionality of an enactment of the General Assembly, our analysis, as the majority acknowledges, begins with the strong presumption that all legislative enactments are indeed valid. *Northern Ohio Patrolmen's Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375, 377, 15 O.O. 3d 450, 451, 402 N.E. 2d 519, 521; *Mominee* v. *Scherbarth* (1986), 28 Ohio St. 3d 270, 274, 28 OBR 346, 349, 503 N.E. 2d 717, 720. Courts must indulge and apply all such presumptions in order to uphold a statute assailed as unconstitutional if at all possible. See *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, 4 OBR 150, 446 N.E. 2d 449. To end the analysis at this point, as the majority does, is a disservice to the parties involved, and will no doubt invite future litigation which will invariably attempt to pick apart various provisions of R.C. Chapter 4117 as violative of the home-rule sections of the Ohio Constitution.

As this court noted in *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44,* v. *State Emp. Relations Bd.* (1986), 22 Ohio St. 3d 1, 22 OBR 1, 488 N.E. 2d 181, the Public Employees' Collective Bargaining Act was adopted as a comprehensive law to govern labor relations between public employers and employees, and to replace the outmoded Ferguson Act.

The appellant city of Twinsburg and supporting *amici curiae* claim that R.C. Chapter 4117 infringes upon constitutionally granted powers of local self-government. However, as this court noted in *Kettering* v. *State Emp. Relations Bd.* (1986), 26 Ohio St. 3d 50, 26 OBR 42, 496 N.E. 2d 983, the cities' powers of local self-government are not completely unfettered. Even where a municipal regulation appears to be peculiarly local in nature, such regulation may not conflict with state legislation on matters of general and statewide concern. *Cleveland Elec. Illum. Co.* v. *Painesville* (1968), 15 Ohio St. 2d 125, 44 O.O. 2d 121, 239 N.E. 2d 75. As held by this court in both *Kettering* and *Painesville,* the test to be used in determining whether a matter is one of local self-government was established in *Beachwood* v. *Bd. of Elections of Cuyahoga Cty.* (1958), 167 Ohio St. 369, 371, 5 O.O. 2d 6, 7-8, 148 N.E. 2d 921, 923:

"To determine whether legislation is such as falls within the area of local self-government, the result of such legislation or the result of the proceedings thereunder must be considered. If the result affects only the municipality itself, with no extra-territorial effects, the subject is clearly within the power of local self-government and is a matter for the determination of the municipality. However, if the result is not so confined it becomes a matter for the General Assembly."

Upon reciting this test, we observed in *Painesville, supra,* at 129, 44 O.O. 2d at 123, 239 N.E. 2d at 78:

"Thus, even if there is a matter of local concern involved, if the regulation of the subject matter affects the general public of the state as a whole more than it does the local inhabitants the matter passes from what was a matter for local government to a matter of general state interest."

Appellant relies primarily on our prior pronouncement in *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191, 5 O.O. 2d 481, 151 N.E. 2d 722, for the proposition that enactments covering the exercise of local self-government prevail over conflicting state laws. However, we also pointed out therein, "* * * this con-

stitutional provision [Section 3, Article XVIII] first gives municipalities 'authority to exercise all powers of local self-government,' and then, with respect to some of those powers, *i.e.*, the power 'to adopt and enforce * * * local police, sanitary and other similar regulations,' it limits the powers to adopt such regulations to such 'as are not in conflict with general laws.' " *Id.* at 197, 5 O.O. 2d at 485, 151 N.E. 2d at 727.

Thus, even if one were to accept appellant's broad application of the holding in *Canada, supra,* to the instant cause, a careful analysis of the precedents subsequent to *Canada* nevertheless indicates that the supremacy of the state police powers is favored over local powers when a statewide concern is implicated, and where the local regulation conflicts with the statewide provision. See *Kettering, supra; Painesville, supra; Columbus* v. *Teater* (1978), 53 Ohio St. 2d 253, 7 O.O. 3d 410, 374 N.E. 2d 154; *State, ex rel. Evans,* v. *Moore* (1982), 69 Ohio St. 2d 88, 23 O.O. 3d 145, 431 N.E. 2d 311; *State, ex rel. Villari,* v. *Bedford Hts.* (1984), 11 Ohio St. 3d 222, 11 OBR 537, 465 N.E. 2d 64; *Weir* v. *Rimmelin* (1984), 15 Ohio St. 3d 55, 15 OBR 151, 472 N.E. 2d 341; *State, ex rel. Adkins,* v. *Sobb* (1986), 26 Ohio St. 3d 46, 26 OBR 39, 496 N.E. 2d 994.

Given our prior pronouncement in *Kettering, supra,* this court should reaffirm our holding that the General Assembly was indeed exercising its police power to promote the general safety and welfare of public employees by promulgating R.C. Chapter 4117.

Since the legislature has enacted this comprehensive statutory framework encompassing a real, legitimate and overriding statewide concern, *i.e.*, public-sector labor relations, any conflicting provisions enacted by municipalities must necessarily yield to this express will of the General Assembly, even though the matter is in an area otherwise subject to municipal regulation. *Kettering, supra; Adkins, supra; Evans, supra.* R.C. Chapter 4117 meets all the criteria of the statewide-concern doctrine as established by this court in *Painesville, supra,* and refined in *Canton* v. *Whitman* (1975), 44 Ohio St. 2d 62, 73 O.O. 2d 285, 337 N.E. 2d 766. In addition, it must be underscored that this court held in *Dayton Fraternal Order of Police, supra,* that the law set forth in R.C. Chapter 4117 is a law of general nature having a uniform operation throughout the state. See *Kettering, supra.* By enacting R.C. Chapter 4117, the legislature has validly exercised the state's police powers and has pre-empted municipalities in the area of public employees' collective bargaining. See *Evans, supra;* see, also, *State, ex rel. McElroy,* v. *Akron* (1962), 173 Ohio St. 189, 19 O.O. 2d 3, 181 N.E. 2d 26. In addition, as appellee NOPBA points out, R.C. Chapter 4117 attempts to meet the laudable goal of reducing labor strife in the public sector and is designed to promote labor peace.[2]

The majority should adopt a syllabus in this cause stating that R.C. Chapter 4117 is applicable to all municipalities throughout the state, and that, therefore, R.C. Chapter 4117

---

[2] As this court pointed out in *Dayton Fraternal Order of Police, supra,* several law review notes exposited the fact that between 1973 and 1980, there were over four hundred public-employee work stoppages in Ohio predating the passage of the Public Employees' Collective Bargaining Act. Our opinion in *Kettering, supra,* recognized the General Assembly's desire to enact a comprehensive statewide framework of collective bargaining for all public employees as a response to this state's experience with public-employee labor strife under the Ferguson Act.

is a valid constitutional exercise of legislative power which does not violate a municipality's right to exercise its power of local self-government under either Section 3 or 7, Article XVIII of the Ohio Constitution.

In any event, it is heartening to discover in this case that members of the majority have retreated or abandoned their prior hard-line position of exalting the supremacy of the home-rule provisions of the Constitution. See, *e.g., Kettering, supra,* at 60-63, 26 OBR at 50-54, 496 N.E. 2d at 991-994 (Locher, J., dissenting). Perhaps the majority's retreat in this area presages a more thoughtful constitutional approach in future cases involving the home-rule provisions.

While R.C. Chapter 4117 undoubtedly passes constitutional muster in the manner heretofore mentioned, I further believe that, contrary to the faulty conclusion reached by the majority in *Rocky River, supra,* R.C. Chapter 4117 embodies a legislative determination sanctioned under Section 34, Article II of the Ohio Constitution and thus, on this ground as well, it should override any conflicting municipal regulation. Section 34, Article II provides as follows:

"Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employes; and *no other provision of the constitution shall impair or limit this power.*" (Emphasis added.)

Given the clear and unencumbered language of this constitutional mandate, it readily appears that certain limitations may be placed on municipalities in exercising their constitutional powers of local self-government, especially in light of the above-emphasized language. In *State, ex rel. Bd. of Trustees of Pension Fund,* v. *Bd. of Trustees of Relief Fund* (1967), 12

Ohio St. 2d 105, 41 O.O. 2d 410, 233 N.E. 2d 135, this court was faced with a similar "home-rule" challenge to state legislation that provided for the centralized state administration of local contributions to the state Police and Firemen's Disability and Pension Fund. In finding that Section 34, Article II overrode the "home-rule" provisions of the state Constitution, Judge Herbert wrote on behalf of a unanimous Supreme Court that "[t]here can be no question that the adopters, the people, intended this section of the Constitution to apply both to local government and state employees. The cities and towns and other political subdivisions of the state of Ohio constitute en masse one of the largest of the employers in the state. It is our conclusion that the firemen and police of the various localities of Ohio are employees within the scope of this provision. It appears in clear, certain and unambiguous language that no other provision of the Constitution may impair the intent, purpose and provisions of the above section of Article II." *Id.* at 107, 41 O.O. 2d at 411-412, 233 N.E. 2d at 137. See, also, *Kettering, supra* (Douglas, J., concurring).

Given this court's holding in *Bd. of Trustees, supra,* and in light of the clear and unambiguous language of Section 34, Article II, I believe that R.C. Chapter 4117, which establishes the right of employees to collectively bargain over wages and other conditions of employment, is most certainly a law providing for the general welfare of all public employees, and must, therefore, override any conflicting municipal legislation enacted on authority of Section 3 or 7, Article XVIII of the Ohio Constitution.

In conclusion, I believe it is worth noting that in *McElroy, supra,* at 192, 19 O.O. 2d at 5, 181 N.E. 2d at 28, this court made the cogent observation that "[d]ue to our changing society,

many things which were once considered a matter of purely local concern and subject strictly to local regulation, if any, have now become a matter of statewide concern, creating the necessity for statewide control."

By enacting R.C. Chapter 4117, it is clear that the General Assembly made a determination that the Ferguson Act was unsatisfactory in resolving public-sector labor disputes. Even assuming, *arguendo,* that municipal regulation of public employees has always been a matter of strictly local concern, empirical evidence, as well as the realities of the modern age of mass communication, has drastically altered the validity of such a viewpoint. See *Dayton Fraternal Order of Police, supra.* R.C. Chapter 4117 represents a considered response by the General Assembly to the failings of the Ferguson Act, and is, in my view, a constitutional expression or response of its power to enact a statutory framework that is manifestly one of statewide concern.

Therefore, I would affirm the judgment of the court of appeals and declare that R.C. Chapter 4117 supersedes any conflicting municipal regulations enacted under the home-rule provisions of the Ohio Constitution.

DOUGLAS, J., concurs in the foregoing opinion.

DOUGLAS, J., concurring in part and dissenting in part. I concur in today's decision insofar as it upholds the Ohio Public Employees' Collective Bargaining Act, but I cannot agree with that portion of the majority opinion which relies on *Rocky River* v. *State Emp. Relations Bd.* (1988), 39 Ohio St. 3d 196, 530 N.E. 2d 1.

While it is gratifying to see the majority come to an ultimately sensible conclusion in this case, it is disturbing that the rationale used is less than persuasive in the overall context of the issue presented. The shallow analysis set forth in the lead opinion is particularly troubling given the number of grounds upon which the conclusion could be based, none of which is utilized.

The first and foremost of these is found in Section 34, Article II of the Ohio Constitution, which provides:

"Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employes; *and no other provision of the constitution shall impair or limit this power.*" (Emphasis added.)

As I have previously noted, "[i]f this section is read in the way in which it is written, there is no conflict on this subject between state legislative authority and the power granted local governments under home rule." *Kettering* v. *State Emp. Relations Bd.* (1986), 26 Ohio St. 3d 50, 57, 26 OBR 42, 49, 496 N.E. 2d 983, 989 (Douglas, J., concurring). Since R.C. Chapter 4117 is so clearly designed to provide for the "general welfare" of all employees as contemplated by Section 34, the home-rule provisions of the Constitution cannot "impair or limit" the General Assembly's power to act in this area. The concept of home rule, therefore, has no application in this case, as I have explained more fully in my dissent to *Rocky River, supra,* at 211-214, 530 N.E. 2d at 14-17.

I vehemently disagree with the language in *Rocky River,* unfortunately repeated today, asserting that the power conferred on the legislature by Section 34 is limited to matters concerning hours of employment and the minimum wage. The most elementary reading of Section 34 refutes such a

conclusion and, frankly, I find it deplorable that members of this court would indulge in such speciousness regarding the Constitution of this state.

Many of my objections to *Rocky River,* as well as my reasoning in support of the constitutionality of R.C. Chapter 4117 in its entirety, may be found in my dissent to that decision. I will not repeat that discussion in any detail here. Suffice to say that multiple reasons exist for upholding the constitutionality of the Act. Section 34, Article II is only one of many such reasons. Past decisions of this court, including *Kettering, supra,* and *State, ex rel. Dayton Fraternal Order of Police Lodge No. 44,* v. *State Emp. Relations Bd.* (1986), 22 Ohio St. 3d 1, 22 OBR 1, 488 N.E. 2d 181, certainly militate in favor of upholding the Act. The compelling public policy underlying R.C. Chapter 4117 is powerful incentive to preserve, if at all possible, the General Assembly's handiwork. And, of course, there is the long-standing and vigorous presumption in favor of the constitutionality of legislative enactments. In sum, the validity of R.C. Chapter 4117 rests on a foundation far more solid than today's majority opinion would imply.

It seems strange in this case to find the entire Act declared constitutional and yet find that a portion of the same Act has been held unconstitutional in *Rocky River.* It would seem that this enactment of the General Assembly is either constitutional or it is not. Of course, it is my firm conviction that R.C. Chapter 4117 is completely constitutional. I, therefore, concur in that portion of today's decision which upholds the Act.

SWEENEY, J., concurs in the foregoing opinion.