### GREEN v CLEVELAND (City) et

Ohio Appeals, 8th Dist, Cuyahoga Co.

No. 17581.  Decided June 29, 1940

Phillips & Falsgraff, Cleveland, for plaintiff-appellee.

Henry S. Brainard. Director of Law, Cleveland; Charles W. White, Asst. Director of Law, Cleveland, for defendant-appellant.

### OPINION

By MORGAN, J.

The plaintiff. a classified civil service employee of the City of Cleveland, brought this action seeking a declaratory judgment holding that classified civil service employees of Cleveland are prohibited by §140 of the City Charter from campaigning at an election either for or against a bond issue, a special tax levy, amendments to the City Charter, or in favor of or against any issue submitted to the electorate of the City of Cleveland.

Section 140 of the Cleveland Charter reads as follows:

"No person about to be appointed to any position in the administrative service of the city, shall sign or execute a resignation, dated or undated, in advance of such appointment. No person in the service of the city shall discharge, suspend, lay off, reduce in grade or in any manner change the official rank or compensation of any person in such service, or promise or threaten to do so, for withholding or neglecting to make any contribution of money, or service, or any valuable thing for any political purpose. No person in the service of the city shall use his official authority to influence or coerce the political action of any person or body, or to interfere with any nomination or election to public office. No person in the classified service of the city shall act as an officer of a political organization or take part in a political campaign or serve as a member of a committee of any such organization, or circulate or seek signatures to any petition provided for by primary or

election laws, or act as a worker in favor of or in opposition to any candidate for public office."

The position of the City of Cleveland is that employees in the classified service are not prohibited by §140 of the charter from taking part in a campaign for or against a special tax levy, a bond issue, or a charter amendment "which does not involve a fundamental change in the governmental set-up of the city."

No evidence was introduced at the trial and the case was heard on the statements and admissions in the pleadings. Defendants admit that it is not unusual for classified employees of the city to campaign for special tax levies, bond issues and for charter amendments when requested so to do by the city administration.

The trial court held that a civil service employee of the city is engaged in a political campaign when he

"makes a concerted or systematic effort to influence others in their right of franchise in favor of or against either a candidate for public office or any issue to be determined by vote of the city,"

and that therefore such employee is prohibited by §140 of the charter from taking part in any such campaign.

The city contends that the provision in §140 of the city charter which states that

"no person in the classified service of the city shall act as an officer of a political organization or take part in a political campaign,"

only prohibits a civil service employee from becoming an officer of a partisan or party organization and from taking part in campaigns participated in or conducted by party organizations which, as is well known, interest themselves generally, if not altogether, in campaigns for the nomination and election of public officials.

The question to be determined in this case is whether campaigning for or against an issue which is submitted to the electorate is "political" in its nature and is prohibited by the part of §140 of the charter which states,

"No person in the classified service of the city * * * shall take part in a political campaign."

The meaning of the word "campaign" is not ambiguous. Any organized effort to promote a cause or to secure some definite result with any group of persons is referred to as a campaign. When the result or purpose to be attained is "political" in its nature, then the organized effort can be said to be a "political campaign". It follows that the question to be determined in this case, therefore, can be stated with accuracy to be whether a campaign to pass or defeat a special levy, bond issue or charter amendment is a campaign to attain a "political" result or is for a "political" purpose.

Whether or not the words "political campaign" shall be given the narrow construction contended for by the city, or the somewhat broader construction contended for by the plaintiff, cannot be determined or assisted greatly by dictionary definitions of the words "politics" and "political".

It is common knowledge that these words are sometimes given by common usage the narrow definition contended for by the defendants and sometimes the broader meaning asserted by plaintiff. What is and what is not a "political campaign" must be determined primarily from the evident purpose of the framers of the charter in adopting §140, and by adopting that construction of the word "political" which will accomplish the evident purpose of the makers of the charter in framing the section.

The word "political" is first used in §140 of the charter in the concluding words of the following sentence:

"No person in the classified service of the city shall discharge, suspend, lay off, reduce in grade or in any manner change the official rank or compensation of any person in such service, or promise or threaten to do so, for withholding or neglecting to make any

contribution of money or service or any valuable thing for any political purpose."

What is the meaning of the words "political purpose" as used in the above sentence? It is conceded that if a person in the classified service, when asked, refuses to contribute money or services to elect or defeat a candidate for public office, it, would be a violation of the above provision to punish him in any way for such refusal. Let us consider a different case. An employee in the classified service of the city is asked by a superior in authority to contribute money or services to carry a special tax levy, bond issue or charter amendment at an election. The employee refuses to comply with the request, with the result that because of such refusal he is discharged or laid off or his pay is cut, or his superior threatens him with such treatment. In a proper case brought to its attention, would and should a court hold that the employee had been punished or threatened because he withheld or neglected to make a contribution of money or services "for a political purpose".

We can find no justification whatsoever for limiting the meaning of the words "political purpose" so as to protect an employee in the classified service when he refuses to make a contribution of money or services to elect or defeat candidates for public office while at the same time to deny him any protection when he refuses to campaign for or against some issue submitted to a popular vote. No valid reason can be suggested for interpreting the above provision so as to give such an employee protection in one case and to deny him protection in the other.

The words "political purpose" in their natural meaning would include any purpose to be attained at an election whether the voters at such election are asked to vote on issues or for or against candidates, and such a construction carries out the evident intent and purpose of this provision of §140 of the charter.

This result more clearly follows when it is remembered that the Cleveland city charter provides for the election of officials under the charter on a non-partisan ballot and the charter does not recognize party organizations. By providing for non-partisan elections it is the theory and it was the hope of the framers of the charter that municipal elections should not be contested on strict party lines, but that candidates for municipal offices should be elected for reasons of fitness and on strictly municipal issues.

It is therefore a forced construction of the words "political purpose" in the above provision which would limit their application to the nomination and election of candidates for public office in which party organizations participate.

The second use of the word "political" in §140 of the charter is in the sentence immediately following the one already considered and is as follows:

"No person in the service of the city shall use his official authority to influence or coerce the political action of any person or body, or to interfere with any nomination or election to public office."

What is the meaning of the words "political action" in this sentence? It seems clear to us that whenever a voter casts his ballot, such an act is "political action" on his part whether he votes on candidates or for or against some issue submitted on the ballot. Therefore, if any city official should threaten with a loss of his job any employee refusing to vote for or against a special levy, bond issue or charter amendment, such a threat would constitute, within the meaning of the above provision, an attempt to use the official authority of such official "to influence or coerce the political action" of the employee so threatened.

The next use of the word "political" in §140 of the charter is in the words whose construction control the decision in this case,

"No person in the classified service of the city shall act as an officer of a political organization or take part in a political campaign."

The attorney for the city contends on argument and by brief that the words "political organization" in the above sentence refers only to a party organization and that the words "political campaign" include only those campaigns participated in or conducted by party organizations.

We find accordingly that the word "political" is used in §140 of the charter in the following relations:

"Political purpose", "political action", "political organization" and "political campaign".

There is no justification for a possible claim that the word "political" is used in §140 of the charter with different meanings. We have concluded that the words "political purpose" in this section includes the purpose of securing the passage of or defeating issues submitted to the electorate and that the words "political action" also should be so construed.

No valid reason can be suggested why the expression "political organization" and "political campaign" should be given a more limited and restricted interpretation.

Party organizations, without doubt, are "political organizations". It will be admitted that they are our principal political organizations. But, if an organization is formed whose only purpose would be to secure the passage of or to defeat issues submitted to a vote of the people such would be a "political organization". An election in which issues are submitted to a vote of the people is as truly an exercise of the political power of the government and of the political rights of the electorate as is an election in which public officials are to be nominated or elected.

If the words "political campaign" in the above provision are to be limited to a campaign participated in by party organizations, that is campaigns for the nomination and election of candidates for public offices, then the con-

cluding words of §140 of the charter "or act as a worker in favor of or in opposition to any candidate for public office" would have been sufficient and the denial of the right to an employee in the classified service "to take part in a political campaign" would be mere surplusage.

The limited construction contended for by the city is inconsistent with the admissions of the city in its answer which concede that persons in the classified service of the city are prohibited by §140 of the charter from taking part in a campaign involving a fundamental change in the governmental set-up of the city. Political parties take no greater interest in charter amendments involving a "fundamental change" in the governmental set-up of the city than they do in any other charter amendment. It is well known that campaigns involving amendments to the city charter whether "fundamental" or "not fundamental" are not usually fought out on party lines. When the city admits that campaigns for or against fundamental amendments to the charter are "political campaigns" it abandons the only ground upon which it can limit the term "political campaign" to a campaign participated in by party organizations.

When once it is conceded that the words "political campaign" are not to be limited to campaigns conducted by party organizations there is no stopping place between such a construction and the one contended for by the plaintiff in this case and sustained by the trial court.

It is argued that §140 of the charter, if construed to apply to issues submitted to the electorate as well as to candidates for public office, limits the rights of an employee in the classified service as a citizen and denies him the right of free speech and therefore should be strictly construed. It was not contended however, by the city that §140 of the charter is unconstitutional, if the construction contended for by the plaintiff is adopted.

Sec. 140 of the charter does not limit the right of an employee to express his

opinions as to candidates and as to the issues. The truth is that an employee in the classified service will be freer to express and to vote his real convictions both as to candidates and as to issues if the plaintiff prevails in this action. By §140 of the charter an employee in the classified service is protected from pressure and dictation from his superior officers when candidates or issues are to be voted on by the people, and he will be left free to perform his duties as an employee knowing that his promotion and continuance in office will depend on his efficiency and his honesty in the public service and not on the influence he will be able to exert at election time at the command of his superior officers in nominating and electing candidates or in carrying or defeating issues.

It is the conclusion of the majority of the court that any election in which the voters are asked to pass judgment on candidates for office, or on issues, is political in its purpose and result and when an employee in the classified service of the city takes part in the campaign preceding such election he is taking part in a "political campaign" contrary to the prohibition contained in §140 of the city charter.

The judgment is affirmed.

TERRELL, PJ., concurs.
LIEGHLEY, J., dissents.

By LIEGHLEY, J., (Dissenting):
Relator seeks a declaratory judgment in form effective to bar any and all employees of the City of Cleveland in the classified service from actively participating in any bond issue, special tax levy, or charter amendment election soliciting support for or opposition thereto, by reason of a phrase found in §140 of the charter of the city—"or to take part in a political campaign".

The trial court sustained the claims of relator. On appeal on law only the majority of this court affirmed the judgment entered below.

Exactly copying but rearranging the last sentence of §140, by paragraphing to more clearly exhibit the kinds of activities the framers of this section evidently had in mind and emphasizing the part presenting the issue, it reads as follows:

"No person in the classified service of the city shall
(a) **act as an officer of a political organization or take part in a political campaign,** or (b) serve as a member of a committee of any such organization, or
(c) circulate or seek signatures to any petition provided for by primary or election laws, or
(d) act as a worker in favor of or in opposition to any candidate for public office."

The part emphasized is not separated by any punctuation which is significant, and should be examined as a whole with regard to the entire sentence and the entire section. If this part be ambiguous, rules of construction require that these words be given their usual, ordinary and generally accepted meaning. Hand this sentence to the average voter and get his reaction. Overwhelmingly the answers will be that that language means party or partisan organization or campaign.

Recourse to and adoption of the all-inclusive definitions of "political campaign" found in dictionaries will sustain a construction of the meaning of this sentence and these words claimed therefor by the relator and sustained by the majority.

When this section was submitted to the voters for adoption or rejection, who will contend that their votes were dictated by a dictionary definition rather than the usual and generally understood meaning of the language employed? If the voters were motivated by their common understanding, then this effort to broaden the meaning to comprehend activities not expressly enumerated amounts to a request for judicial legislation, and if granted, is such legislation.

Bond issues, special tax levies and charter amendments are not necessar-

ily party or partisan issues. In many instances, if not most, the two political parties are supporting the same side of the issue. In the science of government, matters political have intimate relation with and to party policy—the partisan policy upon which offices are filled by election. Active participation in the formation of this policy and the election thereon is all that is expressly barred by this provision of the charter. Any claim of more must be grounded upon an unjustified ambiguity sought to be engrafted to warrant a desired construction.

The right of the public to prescribe rules and regulations for the conduct of its public officers and employees is assumed and conceded. However, in cases such as this, the exercise of this right imposes to a greater or less degree a limitation upon the right of free speech, of assembly, of open and free participation in the solution of public questions that may affect the welfare of his home and family.

This limitation should not be imposed upon the employees of this city by judicial decree, but by submission to a vote of the people of a charter amendment couched in language clearly conveying to them that it is intended, if adopted, to bar employees in the classified service of the city from actively participating in any bond issue, special tax levy or charter amendment election by way of or to the extent of soliciting support for or opposition thereto. Such limitation should expressly appear and not rest on implication.

The judgment should be in favor of respondents.