STATE, ex rel. CORRIGAN, Relator, v. CLEVELAND-CLIFFS IRON CO., Respondent.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24445.   Decided July 29, 1958.

John T. Corrigan, Pros. Atty., Saul Danaceau, Asst. Pros. Atty., for relator.

Seth Taft, for respondent.

## OPINION

By SKEEL, PJ.

The action here considered is one in quo warranto invoking the original jurisdiction of this court. The petition of the relator alleges that acts of the respondent (an Ohio Corporation organized for profit) contravene the laws of Ohio, especially §§5733.27, 3517.10, 3517.11, 3517.12 and 3599.03 R. C., and the provisions of Title XXXV R. C., in that it contributed five hundred dollars of its corporate funds to a committee organized for the sole purpose of supporting and seeking the adoption of certain propositions and issues submitted to the voters of Cuyahoga County at a General Election held November 5, 1957. The issues and propositions consisted of a proposed County Home Rule Amendment to the Constitution of Ohio and various proposed tax levies and bond issues to support or provide for or finance County, Metropolitan Park Board, City of Cleveland, Cleveland School Board and Library Board governmental functions. The answer admits that the relator is the duly elected and qualified prosecutor of Cuyahoga County, admits its corporate capacity and that it contributed the sum of five hundred dollars of its money to "The Citizens Committee for City and County Issues," a voluntary association of persons organized to collect money to be used by such committee in its work to promote the adoption of city and county issues and propositions which were submitted to the voters of the City of Cleveland and the voters of Cuyahoga County, Ohio, at the General Election held November 5, 1957. The answer then lists the thirteen propositions or issues by name. Attached to the answer is a copy of each proposition or issue in printed form as presented to the voters by the Board of Elections of Cuyahoga County.

A stipulation is contained in the record as follows:

"The relator and the respondent, waiving trial, hereby stipulate as follows:

1. The sum of $500 delivered by respondent to The Citizens Committee For City and County Issues on September 17, 1957, referred to in the respondent's Answer herein, was money of the respondent.

2. The aforesaid sum of $500 was spent in advocacy of propositions or issues submitted to the voters.

3. The propositions or issues in advocacy of which the said sum was spent were the issues set forth in the respondent's Answer herein."

The code sections prohibiting certain corporations, as enumerated by §5733.02 R. C., from using corporate funds for "Political Purposes," and requiring that corporations shall cause affidavits to be filed asserting that they did not expend funds for political purposes, are §§5733.27 and 3599.03 R. C. Sec. 5733.27 R. C., provides:

"Every corporation required by law, to make returns, statements, or reports to the tax commissioner shall file therewith, in such form as the commissioner prescribes, an affidavit subscribed and sworn to by a person or officer having knowledge of the facts setting forth that such corporation has not, during the preceding year, directly or indirectly paid, used or offered, consented, or agreed to pay or use any of its money or property for or in aid of any political party, committee, or organization, or for or in aid of any candidate for political office or for nomination for any such office, or in any manner used any of its money or property for any political purpose whatever, or for the reimbursement or indemnification of any person for money or property so used. Such forms of affidavit as the commissioner prescribes shall be attached to or made a part of the return, statement, or report required to be made by such corporation."

Sec. 3599.03 R. C., provides:

"(A) No corporation engaged in business in this state shall, directly or indirectly, pay, use, offer, advise, consent, or agree to pay or use the corporation's money or property for or in aid of a political party, committee, or organization, or for or in aid of a candidate for political office, or for a nomination thereto, or use such money or property for any other partisan political purpose, or violate any law requiring the filing of an affidavit respecting such use of such funds.

"Whoever violates division (A) of this section shall be fined not less than five hundred nor more than five thousand dollars.

"(B) No officer, stockholder, attorney, or agent of such corporation shall violate division (A) of this section, participate in, aid, or advise such violation, or solicit or knowingly receive money or other property in violation of division (A) of this section.

"Whoever violates division (B) of this section shall be fined not more than one thousand dollars, or imprisoned not more than one year, or both."

These provisions in somewhat different form came into the law of Ohio in 1908 in an Act entitled "To prevent the corruption of elections and political parties by corporations." The statute then passed, as is true of those above quoted, required certain corporations to file affidavits (as a part of their annual reports as required by law), that such corporations had "not directly or indirectly during the preceding year paid or contributed to the funds of any political organization, committee or candidate or used its money or property in violation of section I of this act." Section I of the Act prohibited a corporation from using or offering or consenting or agreeing to use "any of its money or property for, or in aid of, any political party, committee or organization, or for, or in aid of, any candidate for political office or for nomination for any such office, or in any manner use any of its money or property for

any political purpose whatever * * *." Section 3 of this Act provided a penalty for a violation of either section. It must be noted the title of the Act was to prevent, first, the corruption of elections; and second, the corruption of political parties.

The sections of the Act of 1908 were divided upon recodification of the Ohio Code in 1910, section 2 of the original act becoming a part of the statutes dealing with taxation of corporations and which is now §5733.27 R. C., as above quoted, and sections 1 and 3 becoming part of the Election Code found now in §3599.03 R. C. It is to be noted that the only material change in the substance of section 1 of the Act of 1908 came in 1929 when the phrase "for any political purpose whatever" was amended to read "for any other partisan political purpose." Though now separated. the purpose of these sections was and still is to exclude corporations from participating in or financially supporting political activities. They must be read in pari materia in seeking their true meaning, purpose, and the extent of the prohibition against corporation participation in politics. In giving consideration to the full meaning of these sections, three other sections found in **Chapter 3517 R. C.**, must be kept in mind. **Chapter 3517 R. C.**, is headed "Campaigns; Political Parties." Secs. **3517.10** and **3517.11 R. C.**, dealing with the necessity of a candidate, or committee supporting a candidate seeking election to public office or nomination for such office, require such candidates or committees to file a statement of receipts and expenditures used to promote such candidate. The first sentence of §3517.12 R. C., then provides:

"The provisions of **Title XXXV R. C.** relating to the contributions, receipts, and expenditures of money or other things of value in elections in the case of candidates, the filing of statements relative thereto, and the violations of any such provisions shall apply with equal force and in all details to the contributions, receipts, expenditures, and obligations incurred by persons, committees, and associations in advocacy of or in opposition to the adoption of any proposition or issue submitted to the voters."

The legislature here provided that the giving of financial support for or against issues or propositions submitted to the voters at an election is political in character and is, therefore, circumscribed by the same rules as is true of candidates and parties.

The question presented then is whether or not from the foregoing statutory provisions, a corporation is restricted from giving financial aid only to political candidates seeking election to public office and political parties acting in the interests of candidates for office, using these words in a strict party partisan sense, or does the prohibition include restrictions against financing a campaign in support of other political questions which are by law then to be submitted to the voters for determination at a public election. The phrase of §5733.27 R. C. (the affidavit section), involved is: "'* * *. or in any manner used any of its money or property for any political purpose whatever, * * *.'" This phrase follows the need to report by affidavit that such corporation had not used any of its money or property in aid of a political party, committee or organization or in aid of a candidate seeking public office or

nomination for such office. The phrase found in §3599.03 **R. C.**, directly involved, is "* * * or use such money or property for any other partisan political purpose, * * *." This phrase follows the identical language just noted in §5733.27 **R. C.**, which is the use of corporate "money or property for or in aid of any political party, committee or organization or for or in aid of any candidate for political office or for a nomination * * *" thereto, and is prohibited.

Both of these phrases, if the sole purpose of the statute in which they are found was to prohibit corporations from giving financial aid to political parties or candidates, would be wholly unnecessary and clearly surplusage because such subjects were otherwise fully covered in each of the sections before the phrases with which we are here concerned appeared. It must, therefore, be evident that each phrase intends to prohibit corporations from giving financial aid to or for other political purposes than political parties or candidates. The word "partisan" as used, when considered in the light of the provisions of the section involved, does not restrict its meaning to candidates for office but means, in the context as used, a political issue subject to political controversy by vote of the people.

The meaning of the phrase "political purpose" received judicial interpretation in the case of **Green v. Cleveland (City), 33 Abs 72, 33 N. E. 2d 35** (Court of Appeals—1940), on page 74, where this court said:

"The words 'political purpose' in their natural meaning would include any purpose to be attained at an election whether the voters at such election are asked to vote on issues or for or against candidates, and such a construction carries out the evident intent and purpose of this provision of paragraph 140 of the charter."

The words "political purposes" are all inclusive in defining activities involving the body politic in control of the function of government by the people. There are no other words than can be substituted to completely describe this function of our social, or our public activities. These words are not restricted in their use to elections of public officers supported by organized political parties or otherwise. Every activity encompassing the deciding of issues or adopting of propositions as a part of the democratic process by a vote of the people is in furtherance of and accomplishes a "political purpose" and in the use of these words, such purpose must have been so intended by the legislature.

It must follow, therefore, that financially supporting or contributing funds to be used in seeking to defeat issues or propositions in the process of submitting such questions to the voters, to use monies or property in an attempt to influence the voters to vote for or against issues or propositions legally presented at an election, is clearly an act in furtherance of a "political purpose."

The respondent, being a corporation organized for profit, under the laws of Ohio, and doing business in this state, is prohibited from using its money or property for "Political Purposes" as here defined, and to do so, as admitted by the pleadings and stipulations, is in violation of law. Such acts are outside the powers of its corporate franchise.

Writ to issue as prayed for.

HURD and KOVACHY, JJ, concur.

## CONCURRING OPINION

By KOVACHY, J.

The historical background of Corrupt Practices Acts has significance to the question presented in this case.

At common law, the courts applied strict rules of evidence in cases involving corruption, fraud, bribery, coercion or intimidation so that such prosecutions were attended with great expense and practical difficulties. This led to the enactment of the Corrupt and Illegal Practices Act of 1883 in England. Such laws were not considered in America until the close of the 19th Century when, with the growth of big business, the political parties became dependent upon large corporations as a source of revenue to conduct their campaigns. It became apparent that contributions from corporations were made to further some interest of their own rather than to promote the best interests of the party or the welfare of the people. Special privileges were bought and paid for in that way.

New York was the first to adopt a Corrupt Practices Act in the United States in 1890 and was followed by Connecticut, Michigan, Colorado, Massachusetts and other states enacting similar acts. Ohio passed its first act in 1908. It used much of the language found in the New York Act of 1906. The clause "for any political purpose whatever" was taken verbatim from the New York Statute. New York, however, recognized the all inclusiveness of this language by incorporating in its election laws Chapter 239, page 470, which reads as follows:

"The term 'political committee,' under the provisions of this article, shall apply to every committee or combination of three or more persons cooperating to aid or to promote the success or defeat of a political party or principle, or of any proposition submitted to vote at a public election or to aid or take part in the election or defeat of a candidate for public office, **but nothing in this article contained shall apply to or in respect of any committee or organization for the discussion or advancement of political questions or principles without connection with any election.**" (Emphasis ours.)

Since Ohio, in its original enactment, in no way restricted this broad statement prohibiting corporations from aiding "any politicial purpose whatever," the 1929 amendment, which changed the clause to "or use such money or property for any other partisan political purpose," assumes added significance. Did the legislature have in mind the New York Act, which it originally copied, and intend to clarify the broad expression "any political purpose whatever," not by restricting its meaning by definition, as New York did, but by substituting the words "or use such money or property for any other partisan political purpose?" That seems to have been its manifest object.

Sec. 3599.03 R. C., prohibits the use of money or property of a corporation for or in aid of:

1) A political party
2) A political committee
3) A political organization
4) A candidate for political office
5) A nomination of a candidate to a political office
6) Any other partisan political purpose.

Respondent contends, inter alia, that this section of the Election Law of Ohio was enacted to prevent "corruption of our American party system, where * * * as was so universally known as to make particularization stuffy * * * candidates for office are supported and nourished by political parties, political committees, and political organizations;" that in the use of the expression "other partisan political purposes," the legislature described what went on before, namely, a political party, committee or organization, as partisan; that partisan, therefore, refers to political parties and similar organizations; that the law intends to prohibit corporations from aiding elections having to do with political parties and party candidates and nothing else; and that propositions and issues are not elected but are submitted to voters upon a ballot marked "For" or "Against."

In advancing this contention, respondents lose sight of the fact that many candidates for office under Ohio Law get on the ballot by means of nominating petitions with no party label whatever, and that all candidates for election to judicial office, whether or not nominated at a party primary election, are placed on a nonpartisan ballot for election.

The word "other" means remaining or additional. Partisan is an adverb qualifying the phrase "political purpose." It expresses the manner or quality of the political purpose, and as employed in this statute, plainly has a broader meaning than referring to party elections alone since the legislature in adding the word "other" clearly intended that it embrace the concept of taking sides in an election whether along party lines or not. All elections are partisan in the sense that the voters are either for or against something and whether the election involves candidates, or questions and issues, partisan zeal and spirit develops between those who are for or against the candidate, the proposition or the issue on the ballot, as the case may be.

Corporations do not vote. They exist for the purpose of furthering the particular business in which they are engaged. Corrupt Practices Acts were enacted with respect to them because practices indulged in by certain corporations in making contributions for campaign purposes had become objectionable and subversive to good government and the public welfare. Even if such contributions were made from proper motives, they might afterwards be made the basis for demands which might not be for the public interest to grant.

The Supreme Court stated in the syllabus of **Cochrel v. Robinson, 113 Oh St 526, 149 N. E. 871:**

"4. In the construction of a statute the primary duty of the court is to give effect to the intention of the Legislature enacting it. Such

intention is to be sought in the language employed and the apparent purpose to be subserved, and such a construction adopted which permits the statute and its various parts to be construed as a whole and give effect to the paramount object to be attained."

It, accordingly, seems obvious that the legislature amended §4785-192 GC (now §3599.03 R. C.), in order to make clear its intent to prohibit corporations from contributing to political purposes that are of a partisan nature only and such classification includes all elections, whether for candidates or on questions, propositions or issues.