HUDAK, APPELLEE, *v.* CLEVELAND CIVIL SERVICE COMMISSION, APPELLANT.

(No. 54022—Decided
February 16, 1988.)

*Kenneth J. Fisher,* for appellee.
*Marilyn G. Zack,* law director, *Barbara R. Marburger* and *Robert M. Wolff,* chief assistant law director, for appellant.

MARKUS, J. The city of Cleveland discharged a civil service employee for violating a city charter prohibition against participation in political campaigns by becoming a candidate for city council. The city's civil service commission upheld the discharge order. On the employee's appeal pursuant to R.C. 2506.01, the common pleas court reversed the commission and directed the city to reinstate the employee with back wages.

The trial court interpreted the relevant charter provision to permit any political activity for non-partisan elections, which constitute all this city's elections. We disagree and conclude that the charter prohibits some non-partisan election activity, including this employee's active candidacy. Hence, we restore the commission's decision.

I

The administrative record established the undisputed facts in this case. The employee was a classified civil service employee, as the general maintenance manager in the maintenance division of the city's department of parks, recreation, and properties. He obtained petitions from the board of elections for his candidacy to be the member of council from his ward. He executed the declaration of his candidacy on those petitions, and circulated them.

The employee obtained sufficient signatures, filed his petitions with the election board, and accepted his nomination for that office. These acts qualified him to appear on the primary election ballot. His campaign committee listed his residence as its address. He and his campaign committee produced at least three types of campaign literature, one of which stated: "Return Democrat Joseph M. Hudak to Council." He sought but did not obtain the endorsement of his candidacy by the county Democratic Party.

The commissioner for the employee's division then suspended him pending his discharge, on the following charges:

"Conduct unbecoming an employee in the public service.

"* * * [E]ngaging in any political activity [sic] such as are prohibited by civil service laws or the rules of the Civil Service Commission.

"And for other failure of good behavior which is detrimental to the service * * *."

The commissioner's suspension letter specifically cited Section 140 of the Charter of the city of Cleveland, which provides:

"Tenure; Political Activity Prohibited.

"No person about to be appointed to any position in the administrative service of the City shall sign or execute a resignation, dated or undated, in advance of such appointment. No person in the service of the City shall discharge, suspend, lay off, reduce in grade or in any manner change the official rank or compensation of any person in such service, or promise or threaten to do so, for withholding or neglecting to make any contribution of money or service or any valuable thing for any political purpose. * * * *No person in the classified service of the City shall act as an officer of a political organization or take part in a political campaign, or serve as a member of a committee of any such organization, or circulate or seek signatures to any petition provided for by primary or election laws,* or act as a worker in favor of or in opposition to any candidate for public office." (Emphasis added.)

Thereafter, the director of the employee's department discharged him for the reasons stated in the commissioner's suspension letter. After an evidentiary hearing on the employee's appeal from that ruling, the city's civil service commission approved his discharge. Its findings and conclusions included the following:

"10. Respondent admitted that he was campaigning for the office of council member in Ward 19 of the City of Cleveland and that he did so act as charged in the * * * charging letter.

"* * *

"13. This commission took notice of the fact that in spite of the 'non-partisan' label attached to an election,

that same election might be ingrained with partisan politics, such as political party endorsements of candidates in 'non-partisan' elections. It was further noted that the Cuyahoga County Democratic party had endorsed candidates for council member in the City of Cleveland in the election at issue in this matter.

"* * *

"16. Director Bicking's decision to discharge Respondent Hudak was unanimously upheld by this Commission."

## II

The parties and the trial court agreed that the city could constitutionally prohibit civil service employees from becoming candidates in non-partisan municipal elections. See, also, *Wachsman* v. *Dallas* (C.A. 5, 1983), 704 F. 2d 160, 165; *Magill* v. *Lynch* (C.A. 1, 1977), 560 F. 2d 22, 29. However, the trial court accepted the employee's argument that this charter does not prohibit his candidacy in a non-partisan election. The city's two assigned errors contend that the charter prohibits such activity, at least when one or more political parties have an active role in those elections.

The city's charter generally controls its civil service practices, pursuant to its home rule powers. Section 3, Article XVIII of the Ohio Constitution; *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191, 5 O.O. 2d 481, 151 N.E. 2d 722, paragraph one of the syllabus; *Harbarger* v. *Ballard* (1977), 53 Ohio App. 2d 281, 283, 7 O.O. 3d 334, 335, 373 N.E. 2d 390, 392. Hence, Section 140 of the Cleveland Charter governs this dispute, rather than R.C. 124.57 which governs classified civil service employees outside charter municipalities.

Section 139 of the Cleveland Charter prohibits (a) the city's administrative service employees from "giving, soliciting or receiving any assessment, subscription or contribution for any political party or purpose whatsoever," (b) anyone from "soliciting any assessment, subscription or contribution for any political party or purpose" from the city's administrative service employees, (c) anyone from using influence to secure a position for someone in the city's service as a reward for "personal or partisan service," and (d) anyone from taking part in preparing "any political assessment, subscription or contribution" to or from anyone in the city's administrative service.

As quoted earlier, Section 140 adds further restrictions on the city's civil service employees. More specifically, it disqualifies them to:

"[A]ct as an officer of a political organization or *take part in a political campaign,* or serve as a member of a committee of any such organization, or circulate or seek signatures to any petition *provided for by primary or election laws,* or act as a worker in favor of or in opposition to *any candidate for public office."* (Emphasis added.)

Neither Section 139 nor Section 140 refers to "non-partisan" elections or distinguishes them from "partisan" elections. The employee infers that distinction from the charter language, despite the absence of either term in Section 140. He relies on the Supreme Court's decision in *Heidtman* v. *Shaker Heights* (1955), 163 Ohio St. 109, 56 O.O. 171, 126 N.E. 2d 138. *Heidtman* held that civil service employees outside charter municipalities could circulate petitions for an initiative proposal to place an issue on their local ballot.

However, *Heidtman* construed G.C. 486-23 (now R.C. 124.57). That section imposes significantly less rigorous restrictions on political activities by civil service employees out-

side charter municipalities than does this city's charter. Indeed, this court long ago held that Section 140 precludes this city's civil service employees from circulating such initiative petitions. *Green* v. *Cleveland* (1940), 33 Ohio Law Abs. 72, 33 N.E. 2d 35.

Moreover, *Heidtman* apparently held that even R.C. 124.57 precludes candidacies by civil service employees though they have no involvement with a political party:

"It will be observed in the foregoing statute the first thing that is prohibited is the soliciting of contributions for a political party or *a candidate for public office*. This seems to indicate that the statute has reference to *partisan politics, whether* Republican, Democratic, *independent, or otherwise.* The latter part of the statute prohibits one in the classified service from being an officer in a political organization or taking part in politics, and the query is, *is taking part in politics confined to partisan politics* or is there a broader meaning so as to cover the [initiative] activities of plaintiffs in this case?" *Heidtman* at 118, 56 O.O. at 175, 126 N.E. 2d at 142-143.

The *Heidtman* decision said that independent candidates are "taking part in politics," and used "partisan" activities to include "securing and holding public office through elections." *Id.* at 118-119, 56 O.O. at 175, 126 N.E. 2d at 143. See *Jackson* v. *Coffey* (1977), 52 Ohio St. 2d 43, 6 O.O. 3d 156, 368 N.E. 2d 1259; cf. Webster's Unabridged Dictionary (2 Ed. 1964) 1307 (definition of "partisan"). Contrary to the employee's argument, *Heidtman* did not permit civil service employees to be active "partisan" supporters for candidates in "non-partisan" elections.

More importantly, the legislative history of Section 140 demonstrates its meaning here. The electors of Cleveland adopted Sections 139 and 140 as amendments to the Cleveland City Charter in 1931. The same amendment eliminated all primary elections by political parties for any municipal office, and made all such elections "non-partisan" contests. Cleveland Ordinance No. 95721, Section 4, Cleveland City Record (Sept. 9, 1931) 997.

Presumably, the drafters of that charter amendment, and the voters who approved it, recognized the relationship between these provisions. The ballot language stated the purpose of the disputed language: "to prohibit political assessments against the civil service employees or political activity of civil service employees." Cleveland City Record (Sept. 9, 1931) 33. It is hard to believe that they intended to restrict political activity elsewhere by their civil service employees, but not in the city that employs them.

Even if the plain language of Section 140 did not preclude this employee's candidacy for councilman in a "non-partisan" election, the circumstances precluded his candidacy here. The civil service commission had adequate evidence to support its finding that the election in which this employee participated was "ingrained with partisan politics."

A preponderance of reliable, probative and substantial evidence supported the civil service commission's decision that the employee violated Section 140 of the city's charter. The commission's order was not illegal, arbitrary, capricious, or unreasonable. Hence, the common pleas court should have affirmed the commission's ruling. R.C. 2506.04; *Dudukovich* v. *Housing Authority* (1979), 58 Ohio St. 2d 202, 206-207, 12 O.O. 3d 198, 201, 389 N.E. 2d 1113, 1116. We sustain the city's two assignments of error, reverse the trial court's judgment, and reinstate the commission's order.

*Judgment reversed.*

JOHN V. CORRIGAN, P.J., and COOK, J., concur.

ROBERT E. COOK, J., of the Eleventh Appellate District, sitting by assignment.