PAINTER, Appellee,

v.

GRALEY, Appellant.

[Cite as *Painter v. Graley* (1992), 84 Ohio App.3d 65.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61148.

Decided Dec. 21, 1992.

66

*Joseph R. Compoli, Jr.,* and *James R. Goodluck,* for appellee.

*Danny R. Williams,* Law Director, and *Harold C. Reeder,* Assistant Law Director, for appellant.

FRANCIS E. SWEENEY, Presiding Judge.

Defendant-appellant, Charles L. Graley, timely appeals from the decision of the common pleas court which granted summary judgment in favor of plaintiff-appellee, Shirley Painter. Appellee filed a timely notice of cross-appeal. For the reasons set forth below, we reverse the decision of the common pleas court and enter judgment in favor of appellant.

On October 25, 1988, appellee initiated this action through the filing of a complaint. Thereafter, appellee filed an amended complaint alleging that appellant wrongfully terminated her employment in violation of her rights to freedom of speech and expression, as guaranteed by Sections 2 and 11, Article I of the Ohio Constitution. Appellee further alleged that Section 16, Article I of the Ohio Constitution and R.C. 2305.01 conferred jurisdiction on the court below to hear the instant case.

Appellee filed a motion for summary judgment supported by relevant affidavits and exhibits. Appellant duly filed response briefs. Thereafter, the trial court

granted appellee's motion and, later, denied appellant's motion for reconsideration.

The facts relevant to the summary judgment are as follows:

Appellee was an employee of the Cleveland Municipal Court, Office of the Clerk of Courts ("Clerk's Office"), from October 1984 to October 1985. Appellee held the position of Chief Deputy Clerk. Appellant was the Assistant Personnel Director for the Clerk's Office during this time period. Appellee was an unclassified civil service employee in the bookkeeping department of the civil division.

In 1985, while still an employee with the Clerk's Office, appellee became a candidate for Cleveland City Council. After she became a candidate, a request dated August 21, 1985 was made for a leave of absence beginning on August 22, 1985. Appellant denied this request.

On September 20, 1985, appellant sent appellee a letter, the body of which reads as follows:

"On August 21, 1985, you submitted a request for an extended leave of absence to seek political office in the City of Cleveland. Without regard to knowing whether or not this administration would accept your request for a leave, you filed petitions to become a candidate for Councilman. As of this date, you still have not contacted this office relative to the disposition of that requested leave of absence.

"Prior to your departure from the Clerk's Office, you made a verbal inquiry to the personnel office regarding this administration's position on employees seeking political office, however this position was not presented to you before you filed with the Cuyahoga County Board of Elections.

"Since that time, this administration, after careful review and consideration, feels that your resignation, and not a leave of absence, would be warranted at this time.

"Therefore, the Clerk would require your written letter of resignation to be received no later than Monday, September 30, 1985 at 4:00 P.M.

"If this office is not in receipt of your resignation by that date, we will assume that you do not intend to comply with the request and your employment will be terminated."

Appellee did not respond to appellant's letter and, on October 30, 1985, appellant sent another letter to appellee, the body of which reads as follows:

"As of this date, this office has not received your written resignation that had been requested from you in our letter mailed to you on September 20, 1985.

"As was previously mentioned in that letter, had we not heard from you regarding your employment by Monday, September 30, 1985, the Clerk's office would assume that you do not intend to submit a letter of resignation and you would thereafter be terminated as an employee with this office.

"Therefore, as a result, your employment record reflects that you have been dismissed as of October 1, 1985.

"Should your campaign for Councilman not be successful, this office would consider your application should you desire to be re-employed with the Clerk of Courts office."

Appellee was thereafter discharged effective October 1, 1985.

Based on the above evidence, the trial court granted appellee's motion for summary judgment. The case proceeded to a bench trial on the issue of damages, and this appeal follows.

Appellant's first and third assignments of error raise similar issues and will be discussed jointly. They state:

"I. The common pleas court erred in granting summary judgment for plaintiff-appellee where plaintiff-appellee's complaint failed to state a claim upon which relief could be granted."

"III. The common pleas court erred in granting summary judgment for plaintiff-appellee where plaintiff-appellee was not constitutionally protected from being discharged for becoming actively involved in a partisan election campaign."

Appellant argues the trial court erred in granting appellee's motion for summary judgment where appellee's complaint sought relief on the basis of alleged violations of Sections 2 and 11, Article I of the Ohio Constitution. Appellant contends that under the circumstances of the present case, there is no right to the relief sought directly under these provisions of the Ohio Constitution.

Appellee, on the other hand, argues that the courts of Ohio have long since allowed implied causes of action from alleged violations of state constitutional and civil rights. See, *e.g., Jeffries v. Ankeny* (1842), 11 Ohio 372, 374; *Anderson v. Millikin* (1859), 9 Ohio St. 568, 580. Appellee also argues that the common pleas courts have inherent jurisdiction to hear and adjudicate a cause of action based upon the Constitution of this state. See, *e.g.,* Section 16, Article I of the Ohio Constitution; Restatement of Torts 2d (1965), Section 874A. The trial court failed to address the issue of an implied cause of action under the relevant sections of the Ohio Constitution and, instead, noted that the "gist of this action is

one for wrongful discharge in violation of plaintiff's constitutional rights under Ohio law." We agree with the trial court.[1]

At the time appellee was allegedly wrongfully discharged, Ohio did not recognize a cause of action for tortious wrongful discharge from employment. *Fawcett v. G.C. Murphy & Co.* (1976), 46 Ohio St.2d 245, 75 O.O.2d 291, 348 N.E.2d 144; *South v. Toledo Edison Co.* (1986), 32 Ohio App.3d 24, 513 N.E.2d 800. Consequently, appellee brought the present action, we presume, alleging an implied cause of action based on Sections 2 and 11, Article I of the Ohio Constitution.[2] However, prior to the trial court's journalization of its decision in the present case, the Ohio Supreme Court announced its decision in *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, which recognized that a cause of action for wrongful discharge in violation of public policy may be brought in tort. *Id.*, paragraph three of the syllabus. The Supreme Court went on to hold "that public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." *Id.* at 234, 551 N.E.2d at 986. In *Greeley*, the court concluded that the plaintiff stated a cause of action for wrongful discharge in violation of R.C. 3113.213(D). *Id.* at 235, 551 N.E.2d at 987. R.C. 3113.213(D) provides in pertinent part that "[n]o employer may use an order to withhold personal earnings [to ensure payment of child support obligations] * * * as a basis for a discharge of * * * an employee * * *." See, also, *Shaffer v. Frontrunner, Inc.* (1990), 57 Ohio App.3d 18, 566 N.E.2d 193 (holding

---

1. A fair reading of appellee's second amended complaint reveals that her cause of action sounds as one for tortious wrongful discharge. Appellee alleges that appellant engaged in "unlawful conduct" (Paragraph 3), acted "to punish the plaintiff for exercising her constitutional and legal right to run for office," "without authorization of law," "willingly, knowingly, purposely, and deliberately abridging the rights of plaintiff to Freedom of Speech and Expression" (Paragraph 21), and "at all time relevant to this complaint, acted with malicious purpose, in bad faith, and/or in a wanton or reckless manner" (Paragraph 22), as a result of which "plaintiff suffered financial injury, harm to her reputation, humiliation and embarrassment" (Paragraph 25). Appellee sought, among other relief, compensatory and punitive damages.

2. Section 2, Article I of the Ohio Constitution provides:
   "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly."
   Section 11, Article I of the Ohio Constitution provides:
   "Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press. In all criminal prosecutions for libel, the truth may be given in evidence to the jury, and if it shall appear to the jury, that the matter charged as libelous is true, and was published with good motives, and for justifiable ends, the party shall be acquitted."

that R.C. 2313.18 legislatively announces public policy sufficient to support a cause of action for tortious wrongful discharge where the plaintiff and her mother are terminated from their employment due to plaintiff's missing work to attend jury duty).

In the present case, appellee argues that an implied cause of action for wrongful discharge exists under Sections 2 and 11, Article I of the Ohio Constitution. Appellee further claims to be an unclassified civil service employee and to be expressly permitted to engage in political activity and expression pursuant to Ohio Adm.Code 123:1–46–02(E). Appellant, on the other hand, argues that appellee was in the unclassified civil service of the city of Cleveland, a charter municipality, which is not governed by the relevant provisions of the Ohio Administrative Code.

R.C. 1901.32(F) provides, in pertinent part, that "[i]n the Cleveland Municipal Court * * * the chief deputy clerks * * * are in the unclassified civil service of the City of Cleveland * * *." Moreover, R.C. 1901.32(F) provides, in pertinent part, "[a]ny appointee under sections 1901.01 to 1901.37 of the Revised Code may be dismissed or discharged by the same power which appointed him." Accordingly, we conclude that deputy clerks of the Cleveland Municipal Court are within the jurisdiction of the Civil Service Commission of the city of Cleveland. Moreover, Ohio municipalities such as the city of Cleveland have general home-rule authority to regulate the appointment, removal, qualifications, compensation and duties of its offices and employees. *State Personnel Bd. of Review v. Bay Village Civ. Serv. Comm.* (1986), 28 Ohio St.3d 214, 216, 28 OBR 298, 300, 503 N.E.2d 518, 520. Provisions in a municipal charter with reference to civil service discontinue the general law on the subject as to that municipality. *State ex rel. Lentz v. Edwards* (1914), 90 Ohio St. 305, 310, 107 N.E. 768, 768; *State Personnel Bd. of Review v. Bay Village Civ. Serv. Comm.* (Jan. 6, 1986), Cuyahoga App. No. 49319, unreported, 1986 WL 704, affirmed (1986), 28 Ohio St.3d 214, 28 OBR 298, 503 N.E.2d 518. Therefore, we conclude that Ohio Adm.Code 123:1–46–02(E)[3] does not apply to city of Cleveland civil service employees. See *Dugan v. Akron Civ. Serv. Comm.* (1983), 9 Ohio App.3d 218, 9 OBR 368, 459 N.E.2d 618.

Nonetheless, appellee argues that Cleveland Codified Ordinance 171.49 prohibits her discharge for running for political office. Cleveland Codified Ordinance 171.49 provides:

"(a) Every officer and employee, whether in the classified or unclassified service of the City, shall have and enjoy the right of free speech, as guaranteed to them as citizens of the United States and the State, as provided in the United

---

**3.** Moreover, Ohio Adm.Code 123:1–46–02 states that it was promulgated to interpret R.C. Chapter 124.

States Constitution and the Constitution of the State, and may freely discuss any matters, including but not limited to matters relating to religion or politics.

"(b) No officer or employee of the City, whether in the classified or unclassified service of the City, shall promulgate or enforce or attempt to promulgate or enforce any order, rule, regulation or directive, either written or oral which prohibits or attempts to prohibit any officer or employee from exercising his or their right to free speech, as Constitutionally and legally guaranteed * * *."

Accordingly, it is against this backdrop that we must decide whether Sections 2 and 11, Article I, as illuminated by Cleveland Codified Ordinance 171.49, articulate a sufficient public policy to state a cause of action for tortious wrongful discharge of an unclassified civil service employee of the city of Cleveland who was discharged for running for political office.

■ It is not disputed that the government, whether federal, state or local, may prohibit its employees from running for elective office. See *United States Civ. Serv. Comm. v. Natl. Assn. of Letter Carriers, AFL–CIO* (1973), 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796; *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830. Moreover, neither the United States Supreme Court nor the Ohio Supreme Court has recognized that there is a fundamental right to become a candidate. *Clements v. Fashing* (1982), 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508, 515; *State ex rel. Keefe v. Eyrich* (1986), 22 Ohio St.3d 164, 165, 22 OBR 252, 253, 489 N.E.2d 259, 260 (there is no fundamental right to run for public office). In fact, this very court, in *Hudak v. Cleveland Civ. Serv. Comm.* (1986), 44 Ohio App.3d 15, 540 N.E.2d 741, upheld a city of Cleveland charter provision which prohibited classified civil service employees from becoming candidates in a municipal election.

■ In the present case, we conclude that appellant did not violate Sections 2 and 11, Article I of the Ohio Constitution, as illuminated by Cleveland Codified Ordinance 171.49, by discharging appellee, an unclassified civil service employee of the city of Cleveland, for running for political office. The right to become a candidate, unlike the right to speech, is not a fundamental right. *Clements, supra; Keefe, supra,* 22 Ohio St.3d at 165, 22 OBR at 253, 489 N.E.2d at 260. Rather, such right is a lesser and derivative right of the right to free speech. *Clements, supra,* 457 U.S. at 977, 102 S.Ct. at 2851, 73 L.Ed.2d at 516, fn. 2 (Brennan, J., dissenting) ("Although we have never defined candidacy as a fundamental right, we have clearly recognized that restrictions on candidacy impinge on First Amendment rights of candidates and voters"). Moreover, Cleveland Codified Ordinances do not specifically provide city employees with the right to run for political office. In fact, Section 140, which this court specifically upheld as constitutional, see *Hudak, supra,* states that no classified civil service

employee "shall * * * take part in a political campaign." While Section 140 only prohibits classified civil service employees from taking part in a political campaign, it must be read in connection with Section 171.49, which states that all city employees have "the right to free speech * * * and may freely discuss any matters, including but not limited to matters relating to religion or politics." Accordingly, we conclude that Section 171.49 does not contemplate the right to run for political office within the right to free speech. Thus, appellant did not violate Cleveland Codified Ordinance Section 171.49 by discharging appellee for running for political office. Furthermore, without the deprivation of fundamental constitutional rights, this court cannot conclude that Sections 2 and 11, Article I articulate sufficient public policy to justify a cause of action for tortious wrongful discharge of an unclassified civil service employee of the city of Cleveland who was discharged for running for political office.

We, therefore, conclude the trial court erred in holding otherwise and granting appellee's motion for summary judgment.

Appellant's first and third assignments of error are well taken.

Appellant's second assignment of error is as follows:

"The common pleas court erred in granting summary judgment for plaintiff-appellee where the statute of limitations had run on any claim plaintiff-appellee may have had."

■ Appellant argues the trial court erred in applying the four-year statute of limitations found in R.C. 2305.09(D). We find the applicable statute of limitations for tortious wrongful discharge actions is the general or residual statute for personal injury actions, *i.e.*, R.C. 2305.09(D). See, *e.g., Bojac Corp. v. Kutevac* (1990), 64 Ohio App.3d 368, 581 N.E.2d 625. Accordingly, the trial court did not err in applying this statute.

Appellant's second assignment of error is without merit.

Appellant's final assignment of error follows:

"The common pleas court erred in granting summary judgment for plaintiff-appellee where defendant-appellant had a qualified immunity."

Because this court finds appellant's first and third assignments of error to be well taken, appellant's final assignment of error is also well taken. The court having determined that in the present case, Sections 2 and 11, Article I do not articulate sufficient public policy to state a cause of action for tortious wrongful discharge, appellant cannot possibly be held individually liable. Accordingly, appellant's final assignment of error is well taken.

Appellee raises two cross-assignments of error for our review as well. They state:

"I. The court below erred in overruling plaintiff's motion to allow compensatory damages to be awarded for plaintiff's humiliation, mortification and embarrassment, and testimony in support of such damages.

"II. The court below erred in not allowing plaintiff to be awarded compensatory damages for plaintiff's loss of future wages and benefits (front pay) and testimony in support of such damages."

Appellee's cross-assignments of error are without merit. First, the court having resolved appellant's first, third and fourth assignments of error in appellant's favor, it follows that appellee is not entitled to damages. Second, appellee has waived this argument on appeal by failing to preserve the issue in the court below. In the court below, appellee's complaint sought relief for compensatory and punitive damages. Additionally, appellee filed various briefs in support of permitting compensatory damages to be awarded for lost future wages and benefits and emotional distress, humiliation, mortification and embarrassment. Finally, appellee filed proposed "jury instructions" seeking the above damages. The trial court, in a half-sheet journal entry, wrote, "Plaintiff's motion to allow Compensatory Damages to be Awarded is Overruled." However, the above order can only be considered an interlocutory order which could be changed at any time prior to final judgment. Civ.R. 54(B); see, also, *Jarrett v. Dayton Osteopathic Hosp., Inc.* (1985), 20 Ohio St.3d 77, 20 OBR 407, 486 N.E.2d 99. As such, appellee was obligated to preserve error by proffering for the record testimony supporting an award of such damages. See *Schill v. Bob Schmitt Realty* (Oct. 13, 1990), Cuyahoga App. No. 59499, unreported, 1990 WL 156072; *State v. Hartford* (1984), 21 Ohio App.3d 29, 21 OBR 30, 486 N.E.2d 131. Having failed to proffer such testimony, appellee has waived this alleged error for appeal.

Accordingly, appellee's cross-assignments of error are overruled.

The judgment is reversed, and final judgment is entered for defendant-appellant, Charles L. Graley.

*Judgment reversed.*

KRUPANSKY, J., concurs.

BLACKMON, J., dissents.

PATRICIA A. BLACKMON, Judge, dissenting.

I respectfully dissent from the majority's decision that Sections 2 and 11, Article I, Ohio Constitution are not sufficient public policy exceptions under *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, when the freedom of expression at issue is the right to become a

candidate and run for public office. In arriving at its decision the majority concludes that the right to run for public office must be a fundamental right in order to invoke the *Greeley* public policy exception to the employment-at-will doctrine. The majority's application of the fundamental rights doctrine to this case is an interesting concept, although it is misplaced.

In order to fully appreciate the majority's interpretation of the *Greeley* standard, it is necessary to understand the *Greeley* public policy exception to the employment-at-will doctrine. Basically, it is the granting of a cause of action in tort to those employees who are wrongfully discharged in violation of public policy. The Ohio Supreme Court held in *Greeley* that other public policy exceptions to the doctrine may exist and if so they are required to be of an import as serious as the statutory violation in the *Greeley* case.

Therefore, in applying the *Greeley* exception to this case, the standard is whether the public policy at issue is as serious as a statutory violation to warrant the application of the exception. The majority says that since the right to run for public office is not a recognized fundamental right, it is not as serious as a statutory violation and *Greeley* does not apply. For this position they cite the Ohio Supreme Court's decision in *State ex rel. Keefe v. Eyrich* (1986), 22 Ohio St.3d 164, 22 OBR 252, 489 N.E.2d 259. I submit that the proper application of the court's holding in *Keefe* is that " '[t]he right to become a candidate for state office, like the right to vote for the election of state officers * * * [citation omitted], is a right or privilege of state citizenship * * * .' " *Id.* at 165, 22 OBR at 253, 489 N.E.2d at 260. In *Keefe*, the court further states that for purposes of review under the United States Constitution the right to run for public office is not a fundamental right. This holding is not a restriction on Painter's case, which deals with review of the Ohio Constitution. In *Keefe* the Ohio Supreme Court recognizes the right to run for public office as a viable public policy concern when the court states that the right to run is a right of citizenship.

Besides the state's right to recognition, the right to run for public office has always been included in the right to speech, expression, and association. *Mancuso v. Taft* (C.A.1, 1973), 476 F.2d 187, 195–196; *Vincent v. Maeras* (S.D.Ill.1978), 447 F.Supp. 775, 777–779; *Johnson v. Cushing* (D.Minn.1980), 483 F.Supp. 608, 614. Consequently, the right to run for office under Sections 2 and 11, Article I, is a public policy concern sufficient to invoke the *Greeley* exception. A violation of the Ohio Constitution is as serious as the violation of a statute, and, as such, the *Greeley* public policy exception applies. Additionally, the United States Supreme Court has held that a public employee may redress a discharge when the discharge violates the employee's right to expression and association. *Pickering v. Bd. of Edn.* (1968), 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811; *Mt. Healthy City Bd. of Edn. v. Doyle* (1977), 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d

471; and *Rankin v. McPherson* (1987), 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315.

Regardless of the triplication of rights employed in this case, Painter established that she was fired because she exercised her right to run for office. When she was fired the city's action impinged on her right to speech, expression and association as guaranteed to her under the Ohio Constitution. Therefore, she may redress this wrongful violation in tort under the *Greeley* standard.

Hence, I would hold that the trial court properly granted summary judgment as well as correctly applied the balancing test of *Pickering,* which requires the weighing of the employee's rights and the city's interest in discharging her for exercising her rights. The city was required to establish that discipline, harmony, relationship between the incumbent councilmen, job performance or general enterprise suffered as a result of her candidacy in order to outweigh her rights of her expression and association. Since she was not at work during her candidacy and therefore not a policymaker, and since there was no prerestrictive policy forbidding her candidacy, the trial court's decision to grant summary judgment was correct.