**The STATE ex rel. EKEY**

v.

**ROCKY RIVER BOARD OF EDUCATION, et al.**

[Cite as *State ex rel. Ekey v. Rocky River Bd. of Edn.* (1996), 110 Ohio App.3d 530.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67155.

Decided April 23, 1996.

*Seymour R. Brown,* for relator.

*Squire, Sanders & Dempsey, Susan C. Hastings* and *Brian A. Paton; Steven A. Vasek,* for respondents.

*Victor Smole, pro se.*

KARPINSKI, Presiding Judge.

Relator is an employee of respondent board of education ("board"). Relator requests that this court issue a writ of mandamus compelling respondents—the board, its superintendent, and its treasurer—to compensate her for back pay and benefits, as well as to make future payments to her, in accordance with the board's salary schedule for teachers rather than the hourly rate paid to learning assistants.

Pursuant to this court's order, the parties filed stipulations. Additionally, we appointed a commissioner to hear disputed issues of fact. A transcript of the hearing before the commissioner was filed with the clerk ("Tr."), the commissioner filed her findings of fact, and the parties filed briefs. Having reviewed these materials as well as the pleading and exhibits, we deny relator's request for relief in mandamus.

Relator has been an employee of the board since 1979. From 1979 to 1981, she worked as a tutor in a program for gifted and talented elementary-age students. The stipulations stated the following:

"2. From 1981 to the present, Relator has been assigned to the high school to work with students who require additional educational assistance. From 1981 to 1989, the position held by Relator was entitled 'tutor.' This position did not require a teacher's certificate pursuant to state law or regulations.

"3. In August of 1989, the tutor position to which Relator was assigned was retitled 'learning assistant,' which is a term used by Rocky River Schools for educational aid [sic] positions governed by O.R.C. § 3319.088. Relator's assignment at the high school essentially remained unchanged in all material respects; however, she was required to obtain an educational aide permit in accordance with O.R.C. 3319.088. With the exception of maintaining an educational aide permit, the position of learning assistant does not require any special license or teaching certificate.

"4. Relator currently holds a standard provisional teaching certificate for grades 1 through 8. She has never held a high school teaching certificate. She also holds an educational aide permit * * *."

■ "It is well-settled that a claim by a public employee of entitlement to wages or benefits which are granted by statute or ordinance is actionable in mandamus." *State ex rel. Villari v. Bedford Hts.* (1984), 11 Ohio St.3d 222, 223, 11 OBR 537, 538, 465 N.E.2d 64, 65. In order to maintain her action in mandamus, relator must establish that she has a clear legal right to be compensated as a teacher, respondents have a clear legal duty to compensate her as a teacher, and she has no adequate remedy at law. Cf. *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 544, 660 N.E.2d 463, 465.

In order to determine whether relator has a clear legal right to the relief requested and whether respondents have a clear legal duty to provide that relief, we must examine the relevant statutes.

"In construing a statute, the court's paramount concern is legislative intent. *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1995), 72 Ohio St.3d 62, 65, 647 N.E.2d 486, 488. "In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished." *State v. S.R.* (1992), 63 Ohio St.3d 590, 594–595, 589 N.E.2d 1319, 1323. If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary. *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 584, 651 N.E.2d 995, 997." *Savarese, supra,* 74 Ohio St.3d at 545, 660 N.E.2d at 465.

■ As was noted above, relator has been working with high school students

throughout the relevant time period.[1]  Yet she has never held a high school certificate.  The statutory analysis by the Supreme Court of Ohio in *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.* (1994), 71 Ohio St.3d 26, 641 N.E.2d 188, demonstrates that these circumstances require that we deny relief.

In *Chavis,* the relators were fourteen tutors.  Eleven of the relators provided supplemental instruction to learning disabled students.  The other three provided supplemental instruction in English as a second language ("ESL").  The relators requested relief in mandamus to compensate them for the difference in their pay as tutors and the pay of teachers set forth in collective bargaining agreements.

The *Chavis* court considered whether the relators were "teachers for purposes of the statutes relating to teacher salaries, R.C. 3317.13 and 3317.14."  *Id.* at 30, 641 N.E.2d at 193.  The standard for determining whether a person is a teacher is the definition in R.C. 3317.13(A)(2), which provides:  " 'Teacher' means all teachers employed by the board of education of any school district * * *."  *Id.* The Supreme Court also observed that "R.C. 3317.13(A)(2) must be read in conjunction with R.C. 3319.30."  *Id.*  R.C. 3319.30, provides in part:

"Except as provided in section 3319.36 of the Revised Code [which, in subsection B, authorizes the payment of teachers who are not certificated but who have received a permit to teach from the state board of education pursuant to R.C. 3319.301], no person shall receive any compensation for the performance of duties as teacher in any school supported wholly or in part by the state or by federal funds who has not obtained *a certificate of qualification for the position* as provided by section 3319.22 of the Revised Code * * *."  (Emphasis added.)

The board of education in *Chavis* "admitted that thirteen of the fourteen [relators] held valid teaching certificates during the relevant school years."  *Id.* at 31, 641 N.E.2d at 193.  The remaining tutor, Judith Pryor, an ESL tutor, had an elementary teaching certificate but did not have an ESL certificate.

The Supreme Court noted that R.C. 3319.22 establishes categories for teaching certificates and observed that Pryor's elementary teaching certificate, "unlike those for middle grades or high school * * *, was valid for teaching in grades one through eight without limitation as to subject matter."  *Id.*  In light of these circumstances and because "there was no evidence that * * * Pryor taught in other grades besides one through eight during the pertinent school year," *id.,* the Supreme Court held that all the relators (including Pryor) "were 'teachers' for

---

**1.**  Relator does not contest respondent's assertion that R.C. 2305.07 bars claims which accrued more than six years before the filing of the complaint in this action on April 20, 1994.  See *State ex rel. Gingrich v. Fairfield City Bd. of Edn.* (1985), 18 Ohio St.3d 244, 245, 18 OBR 300, 301–302, 480 N.E.2d 485, 486–487.

purposes of R.C. 3317.13 and 3317.14 and were not barred by R.C. 3319.30 from compensation for their duties as tutors." *Id.*, at 32, 641 N.E.2d at 194.

Obviously, Pryor's being certified to teach at the level on which she was serving as a tutor, along with the nature of Pryor's certification—which includes all subjects for grades one through eight—was pivotal to the Supreme Court's holding that she was entitled to compensation as a teacher.

This action presents different circumstances. Although relator has the same certification as Pryor, that is, grades one through eight, relator works *only with high school students.* Relator has *never* held a high school teaching certificate. As the analysis in *Chavis* demonstrates, relator is barred by R.C. 3319.30 from compensation as a "teacher" for her duties as a learning assistant at the high school. That is, she does not have a clear legal right to be compensated as a "teacher" under R.C. 3317.13 and 3317.14 because she "has not obtained *a certificate of qualification for the position* as provided by section 3319.22 of the Revised Code." (Emphasis added.) R.C. 3319.30. In light of R.C. 3319.30, this lack of proper certification alone is dispositive. *Chavis* requires, therefore, that we deny relief.[2]

Despite the certification requirement of R.C. 3319.30, relator asserts that—as a learning assistant—she performs the duties of a teacher and, therefore, is entitled to be compensated as a teacher under R.C. 3317.13(A)(2), rather than as an educational aide under R.C. 3319.088. Respondents argue that because relator's duties are those of an educational aide as defined by R.C. 3319.088, she lacks a clear legal right to relief and, therefore, respondents do not have a clear legal duty to compensate her as a teacher.

As the party seeking relief, relator has the burden of proof. " 'The facts submitted and the proof produced must be plain, clear, and convincing before a court is justified in using the strong arm of the law by way of granting the writ [of mandamus].' " *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 161, 40 O.O.2d 141, 154, 228 N.E.2d 631, 647 (quoting 35 Ohio Jurisprudence 2d Mandamus, Section 37, at 285). Given the record in this action, we conclude that relator has failed to meet her burden of proving that her activities are among those of a teacher rather than those of an educational aide. As a consequence, we must deny relief.

R.C. 3319.088 provides:

---

**2.** We also note that R.C. 3319.36 (currently, R.C. 3319.36[A][2] ) prohibits the treasurer of a school board from drawing a check for the payment of a teacher who has not filed with the treasurer a teacher's certificate "to teach the subjects or grades taught." Although the parties have not discussed the significance of this provision, R.C. 3319.36 appears to be a sufficient basis for determining that respondents do not have a clear legal duty to compensate relator as a teacher.

"As used in this section, 'educational aide' means any nonteaching employee in a school district who directly assists a teacher as defined in section 3319.09 of the Revised Code, by performing duties for which a certificate issued pursuant to sections 3319.22 to 3319.30 of the Revised Code is not required.

" * * *

"(C) Educational aides shall at all times while in the performance of their duties be under the supervision and direction of a teacher as defined in section 3319.09 of the Revised Code.  Educational aides may assist a teacher to whom assigned in the supervision of pupils, in assisting with instructional tasks and in the performance of duties which, in the judgment of the teacher to whom the aide is assigned, may be performed by a person not certificated pursuant to sections 3319.22 to 3319.30 of the Revised Code and for which a teaching certificate, issued pursuant to sections 3319.22 to 3319.30 of the Revised Code is not required.  The duties of an educational aide shall not include the assignment of grades to pupils.  The duties of an educational aide need not be performed in the physical presence of the teacher to whom assigned, but the activity of an educational aide shall at all times be under the direction of the teacher to whom assigned.  The assignment of an educational aide need not be limited to assisting a single teacher.  In the event an educational aide is assigned to assist more than one teacher the assignments shall be clearly delineated and so arranged that the educational aide shall never be subject to simultaneous supervision or direction by more than one teacher.

" * * *

"Educational aides may not be used in place of classroom teachers or other employees and any payment of compensation by boards of education to educational aides for such services is prohibited."

Clearly, the intent of the General Assembly was to give local boards of education and individual teachers flexibility in assigning tasks—including "instructional tasks"—to educational aides, but these aides were to work under the direction of a teacher "at all times."

The organizational structure employed by the board in meeting the needs of students assisted by educational aides uses that flexibility.  The board explained it adopted the term "learning assistants" because the administration wanted "to create a title that [it] felt was respectful."  The guidance office generally refers high school students needing assistance to the Learning Resource Center ("LRC"), where each student is assigned to a learning assistant by the Coordinator of Learning Resource Services ("coordinator"), who is certified to teach English (seventh through twelfth grade), reading (kindergarten through twelfth grade), and high school biology.  The Director of Learning Resource Services ("director") supervises the learning assistants and the coordinator.  The director

holds a teaching certificate for special educational/developmentally handicapped for kindergarten through twelfth grade as well as speech pathology, speech and hearing therapy for kindergarten through twelfth grade.

Ordinarily, learning assistants work with from one to three students during a given class period. As the parties have stipulated:

"The student's educational deficit is communicated to the learning assistant, who then works with the student in an attempt to strengthen the particular weakness. The learning assistant is expected to support, reinforce, and provide extra practice based upon the student's classroom work. The learning assistant is not required to develop lesson plans, individual education plans or academic goals and objectives. The learning assistant is expected to maintain a daily record of the student's work and progress."

In addition to relator, two other learning assistants testified. Both of these witnesses divide their time between working as educational aides and as special education tutors. Tutors must hold special certificates and prepare an individual education plan which sets forth goals and objectives for the student. Tutors are paid at a higher rate than learning assistants.

The learning assistants testified, however, that—in their capacity as learning assistants—they exercise individual judgment regarding materials and techniques as well as bring their experience and knowledge as teachers to their work with the students assigned to learning assistants. They also testified that they are teaching and do not receive specific instructions from the classroom teachers, the coordinator, or the director.

The coordinator and the director, on the contrary, both testified that the learning assistants do not teach. That is, the coordinator and the director describe the work of the learning assistants as assisting the students with mastering single skills, subskills, and concepts already introduced by the classroom teacher.

In the stipulations, the parties recognized that classroom teachers have additional duties and responsibilities distinct from those of learning assistants. As the parties have stipulated:

"Unlike learning assistants and certificated tutors, classroom teachers are and have been assigned to perform extra duties such as bus supervision; supervision of students outside the building before and after school; playground supervision; in-school suspension; after school detention; study hall; hall supervision; assemblies and lunch supervision. Classroom teachers are also required to participate in faculty meetings and curriculum development. Classroom teachers are also responsible for assigning grades. Classes taught by classroom teachers generally range from 20 to 30 students, whereas certificated tutors are restricted, by law,

to small group instruction of no more than three students during a given period. By comparison, the number of students with whom a learning assistant may work at any given time is not governed by state law; rather, it is dictated by District practices and the needs of the students in the building where the learning assistant is assigned."

Despite these differences, the coordinator, the director, and the superintendent all testified that relator and the learning assistants make a substantial contribution. With regard to relator, the coordinator stated: "Valerie is very good at what she does, she performs a service very vital. She has a rapport with the students, she understands teenagers, they like her. She's very good. I value her; I value her."

The issue before this court, however, is not whether relator enhances the educational experience of the students with whom she works. Rather, we must consider whether the record in this action provides us with a basis for concluding that relator has both a clear legal right to be compensated as a teacher and that respondents have a clear legal duty to compensate her as a teacher.

The evidence is not "plain, clear, and convincing," *Pressley*, 11 Ohio St.2d at 161, 40 O.O.2d at 154, 228 N.E.2d at 647, that relator is serving as a teacher rather than as an educational aide. The organizational structure ensures that relator "at all times be under the direction of the teacher to whom assigned." R.C. 3319.088(C). The job description of the coordinator states as one of her "essential job functions" the following: "Assists in the selection, *supervision*, and observation (not for the purposes of personnel evaluation) of Learning Resource Service personnel." (Emphasis added.) Both the coordinator and the director testified that the coordinator provides direction for the learning assistants. On the other hand, learning assistants testified that they do not receive supervision from either the classroom teacher or the coordinator. This conflict in the testimony reflects that the evidence is *not* "plain, clear, and convincing" that relator's work as a learning assistant entitles her to be compensated as a teacher.

Furthermore, the role of the coordinator prevents the learning assistants from being "subject to simultaneous supervision or direction by more than one teacher." R.C. 3319.088(C). Rather, the board has created an environment in which the assignments flow through one individual—the coordinator—to the learning assistants who then have access to a variety of resources including the classroom teacher and the coordinator.

Additionally, the standard for determining whether the tasks required of a learning assistant are appropriate is whether "in the judgment of the teacher to whom the aide is assigned, [the tasks] may be performed by a person not certificated pursuant to sections 3319.22 to 3319.30 of the Revised Code and for which a teaching certificate, issued pursuant to sections 3319.22 to 3319.30 of the

Revised Code is not required." R.C. 3319.088(C). Relator has not demonstrated that any assignment given to her requires, in the judgment of the teacher to whom the aide is assigned, a teaching certificate.

We also note that the superintendent acknowledged that the decision in *State ex rel. Brown v. Milton–Union Exempted Village Bd. of Edn.* (1988), 40 Ohio St.3d 21, 531 N.E.2d 1297, required that the board reevaluate its use of tutors because *Brown* required that some work done by certificated tutors be compensated at the minimum salary schedule for teachers. See R.C. 3317.13. The increased compensation of tutors limited the resources available to the board for providing assistance to children who were not legally disabled but who required additional assistance. As a result, the board created the position of "learning assistant" and limited the responsibilities to those appropriate for educational aides. Educational aides were to be paid less than tutors and according to a plan adopted by the board. See R.C. 3319.088(D). This court cannot presume to substitute its judgment for that of the board with respect to the allocation of its resources unless, of course, respondent board had failed to discharge a clear legal duty.

Given the record in this action, however, we must conclude that relator has failed to meet her burden of demonstrating that she has a clear legal right to be compensated as a teacher and that respondent has a clear legal duty to compensate her as a teacher. Accordingly, relator's request for relief in mandamus is denied.

*Writ denied.*

LEO M. SPELLACY, C.J., concurs.

JAMES D. SWEENEY, J., concurs in judgment only.